Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/23/2016 08:09 AM CDT

State of Nebraska, appellee, v.
Douglas Rothenberger, appellant.

___ N.W.2d ___

Filed September 23, 2016.    No. S-14-1160.

1. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

3. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.

4. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Jury Instructions: Judgments: Appeal and Error.** Whether the jury instructions given by a trial court are correct is a question of law. When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

6. **Constitutional Law: Search and Seizure: Arrests: Probable Cause.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. These constitutional protections mandate that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.

7. **Probable Cause: Words and Phrases: Appeal and Error.** Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. An appellate court determines whether probable cause existed under an objective standard of reasonableness, given all the known facts and circumstances. The probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.

8. **Police Officers and Sheriffs: Arrests: Probable Cause.** When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. Probable cause for a warrantless arrest is to be evaluated by the collective information of the police engaged in a common investigation.

9. **Arrests: Probable Cause: Controlled Substances: Blood, Breath, and Urine Tests.** There is no bright-line rule requiring that the full drug recognition expert protocol be administered as a prerequisite to a finding of probable cause to arrest for driving under the influence of drugs. When determining whether probable cause exists to arrest a suspect for driving under the influence of drugs, the same familiar, commonsense principles which govern all arrests apply.

10. ____: ____: ____: ____. Neither drug recognition expert certification nor a completed drug recognition expert examination is a mandatory prerequisite to forming probable cause to arrest a suspect for driving under the influence of drugs.

11. **Criminal Law: Directed Verdict.** In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. If there is any evidence which

will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.

12. **Criminal Law: Police Officers and Sheriffs: Drunk Driving: Controlled Substances: Blood, Breath, and Urine Tests.** The material elements of the crime of refusal are (1) the defendant was arrested for an offense arising out of acts alleged to have been committed while he or she was driving or in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs; (2) a peace officer had reasonable grounds to believe the defendant was driving or in actual physical control of a motor vehicle in this state while under the influence of alcohol or drugs; (3) the peace officer required the defendant to submit to a chemical test of his or her blood, breath, or urine to determine the concentration of alcohol or the presence of drugs; (4) the defendant was advised that his or her failure to submit to a chemical test of his or her blood, breath, or urine is a separate offense for which he or she could be charged; and (5) the defendant refused to submit to a chemical test as required by the peace officer.

13. **Criminal Law: Controlled Substances: Blood, Breath, and Urine Tests.** Neither the type of drug suspected to be causing a person's impairment nor the ability of a chemical test to reveal the presence of a particular drug is an element of the crime of refusal.

14. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

Petition for further review from the Court of Appeals, Pirtle, Riedmann, and Bishop, Judges, on appeal thereto from the District Court for Scotts Bluff County, Leo Dobrovolny, Judge, on appeal thereto from the County Court for Scotts Bluff County, James M. Worden, Judge. Judgment of Court of Appeals affirmed.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, Nathan A. Liss, and Erin E. Tangeman for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Stacy, J.

After a jury trial in county court, Douglas Rothenberger was convicted of refusal to submit to a chemical test and was sentenced to probation. On appeal, the district court affirmed, as did the Nebraska Court of Appeals.[1] On further review, we find no merit to Rothenberger's assigned errors, and we affirm.

## I. FACTS

### 1. Background

Just after midnight on June 19, 2013, a motorist called the 911 emergency dispatch service to report that a vehicle traveling on Highway 92 near Scottsbluff, Nebraska, was swerving from one edge of the highway to the other and fluctuating between 20 and 60 m.p.h. The motorist followed the vehicle until Deputy Sheriff Jared Shepard arrived.

Shepard followed the vehicle and saw it weave back and forth and cross the centerline twice. Shepard testified the vehicle was traveling 20 to 25 m.p.h. on roads where the posted speed limit was 50 to 65 m.p.h. After following the vehicle for about three-fourths of a mile, Shepard activated the lights on his patrol car to initiate a traffic stop. The vehicle did not stop. Shepard then switched on his siren, and the vehicle pulled onto the right shoulder and stopped.

When Shepard made contact with the driver, Rothenberger, Rothenberger's speech was slow and slurred. Rothenberger appeared confused and had trouble getting his window down and opening his vehicle door. Rothenberger looked in his wallet for 3 to 4 minutes before providing Shepard with his driver's license. He was not able to provide current proof

---

[1] See *State v. Rothenberger*, No. A-14-1160, 2015 WL 9004823 (Neb. App. Dec. 15, 2015) (selected for posting to court Web site).

of insurance. Dispatch advised Shepard that Rothenberger's license was suspended. However, the parties stipulated at trial that Rothenberger's Nebraska driver's license was actually expired, rather than suspended, and that he had a valid Texas license.

Shepard asked Rothenberger to step out of the vehicle. Rothenberger had difficulty standing and maintaining his balance without holding onto the vehicle. Shepard did not smell alcohol on Rothenberger's breath, but saw that his eyes were watery. Rothenberger was asked to perform standardized field sobriety tests. During the nine-step walk-and-turn test, Rothenberger could not maintain his balance and staggered into approaching traffic, so Shepard discontinued the test for safety reasons. During the one-legged stand test, Rothenberger was unable to maintain his balance or keep his foot raised for more than 2 seconds. His performance on the tests indicated impairment. Shepard administered a preliminary breath test at the scene, which was negative for alcohol. Shepard asked Rothenberger whether he had taken any medications, and he admitted taking Suboxone within the previous 24 hours. Rothenberger was asked whether he had any medical conditions, and he did not indicate he was suffering from any illness or injury. Rothenberger did not request medical help. Shepard testified that based on his investigation, it was his opinion that Rothenberger was impaired, so he arrested him on suspicion of driving under the influence of alcohol or drugs and driving under suspension and transported him to the Scotts Bluff County sheriff's office for a drug recognition expert (DRE) examination.

Sgt. Jeff Chitwood was dispatched to the traffic stop as backup. Chitwood testified that when he arrived, Shepard was talking to Rothenberger outside the vehicle. Chitwood testified that throughout the contact, Rothenberger had to hold onto his vehicle or the patrol car to keep his balance. Chitwood heard Rothenberger tell Shepard he had taken Suboxone "at 10 a.m. earlier that same day." Chitwood watched while

Shepard took Rothenberger through the standard field sobriety tests. Chitwood testified that during the walk-and-turn test, Rothenberger "wandered off into the traffic lane," and that at another point, Shepard had to catch Rothenberger to keep him from falling. Chitwood asked Rothenberger questions in an effort "to ascertain if we had an impairment case or a medical case." Chitwood testified that based on Rothenberger's answers, there was "never any indication that we had a medical case" and "it was obvious we had an impairment case." Chitwood testified that due to Rothenberger's level of impairment, he was arrested and placed in Shepard's patrol car to be transported to the sheriff's station.

Once at the sheriff's station, Rothenberger was turned over to Sgt. Mark Bliss. Bliss had completed training as a DRE and was also a DRE instructor. Bliss performed a DRE examination on Rothenberger and again administered standardized field sobriety tests. According to Bliss, Rothenberger either failed the standardized field sobriety tests or was unable to complete them for safety reasons because he kept falling. Bliss described Rothenberger as cooperative and polite, but noted he appeared "sedated" and was unable to maintain his balance throughout the investigation. Bliss examined Rothenberger's pupil size, because unequal size could indicate a possible head injury; he determined Rothenberg's pupils were equal in size. After Rothenberger waived his *Miranda* rights, Bliss asked him whether he had taken any medications. Rothenberger admitted "he'd been taking Suboxone" and had taken "his regular dose" at approximately 10 a.m. As the final step in his investigation, Bliss asked Rothenberger to submit to a chemical test for drugs. Bliss read Rothenberger the postarrest chemical advisement form, which provided in pertinent part:

> You are under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs. Pursuant to law, I am requiring you to submit to a chemical test or tests of

your blood, breath, or urine to determine the concentra-
tion of alcohol or drugs in your blood, breath, or urine.

Refusal to submit to such test or tests is a separate
crime for which you may be charged.

. . . .

. . . I hereby direct a test of your . . . urine to deter-
mine the . . . drug content.

Rothenberger refused to sign the advisement form, and he
refused to submit to a chemical test of his urine. A copy
of the postarrest chemical advisement form was received
into evidence.

## 2. MOTION TO QUASH

Rothenberger was charged with two counts: driving under
the influence of alcohol or drugs, second offense, and refusal
to submit to a chemical test, first offense. He moved to quash
the refusal charge on the ground that Nebraska's refusal stat-
ute was unconstitutional under both the U.S. Constitution
and the Nebraska Constitution. The county court overruled
the motion, and Rothenberger entered not guilty pleas to
both counts. For the sake of completeness, we note that
Rothenberger has not assigned error to the county court's
ruling on the motion to quash and does not argue on appeal
that Nebraska's refusal statute is unconstitutional. As such,
although we are aware of the U.S. Supreme Court's recent
decision in *Birchfield v. North Dakota*,[2] the constitutional-
ity of Nebraska's refusal statute is not an issue before us in
this appeal.

## 3. MOTION TO SUPPRESS

Rothenberger also moved to suppress evidence on the
ground his arrest was not supported by probable cause.
He argued Shepard and Chitwood were not DRE-certified

―――――――――

[2] *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d
560 (2016).

examiners, and so could not form the requisite probable cause to arrest him for driving under the influence of drugs. Rothenberger further argued that because there was no probable cause to arrest, both the evidence later obtained through testing by Bliss and the evidence that Rothenberger refused to submit to a chemical test of his urine should also be suppressed. The county court denied the motion after conducting an evidentiary hearing.

### 4. JURY TRIAL

At the commencement of trial, Rothenberger renewed his motion to suppress and was given a continuing objection based on that motion. Rothenberger also made oral motions in limine to preclude the State from offering (1) any testimony from Bliss about Rothenberger's performance on the DRE evaluation or Bliss' opinion regarding the cause of Rothenberger's impairment; (2) evidence Rothenberger told officers he was taking Suboxone to manage a prior addiction to Vicodin; and (3) evidence that when he was stopped, Rothenberger had a pill bottle containing two unidentified pills. The State offered no objection, and the county court sustained Rothenberger's motions in limine. The State then offered evidence consistent with the facts detailed earlier.

### (a) Motion for Directed Verdict

At the close of the State's case, Rothenberger moved for directed verdict on both counts. As to the driving under the influence charge, Rothenberger argued that although there was evidence of impairment, there was no evidence the impairment was caused by alcohol or drugs. As to the refusal charge, Rothenberger argued he could not be convicted of refusing a "chemical test," because, under title 177 of the Nebraska Administrative Code, a "chemical test" is defined as a test to detect seven specific drugs.[3] Rothenberger argued that the drug

---

[3] See 177 Neb. Admin. Code, ch. 7, §§ 001.5 and 001.13 (2007).

he admitted to taking, Suboxone, is not one which a "chemical test," under title 177 would detect.

The county court granted the motion for directed verdict on the driving under the influence charge, reasoning that although there was "clearly a ton of evidence" that Rothenberger was impaired and that alcohol was not causing his impairment, there was insufficient evidence that his impairment was drug related, in part because the State presented no evidence about Suboxone or its effects. The State did not appeal this ruling. The trial court overruled the motion for directed verdict on the refusal charge, reasoning that "there's plenty of evidence for the jury to consider the issue of refusal."

### (b) Jury Instructions

Rothenberger requested two jury instructions related to the refusal charge. He asked for an instruction defining a "chemical test" as "one performed according to the method approved by the Department of Health and Human Services [and stating that] [t]he Method Approved by the Department of Health and Human Services for drug testing is set forth in title 177 NAC 7." Rothenberger also asked that the jury be instructed that "Drug for purposes of a chemical test means any of the following: Marijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, and methamphetamine."

The county court declined to give either proposed instruction. Other than a few minor suggestions on wording, there were no objections raised to any of the other instructions.

### (c) Verdict and Sentence

Rothenberger did not put on a defense. The jury returned a verdict finding him guilty of refusing a chemical test. The county court imposed a sentence of 6 months' probation, a 60-day license revocation, a $500 fine, and court costs.

### 5. APPEAL TO DISTRICT COURT

Rothenberger timely appealed to the district court, assigning that the county court erred in (1) failing to sustain the motion

to suppress, (2) receiving inadmissible hearsay evidence at the motion to suppress hearing, (3) overruling Rothenberger's motion for directed verdict on the refusal charge, and (4) failing to give Rothenberger's proposed jury instructions defining "drug" and "chemical test." The district court found all assignments of error were meritless and affirmed Rothenberger's conviction and sentence.

### 6. COURT OF APPEALS

On further appeal to the Court of Appeals, Rothenberger assigned three errors. He claimed the district court erred in affirming the judgment and conviction, because (1) there was no probable cause to support Rothenberger's arrest, (2) it was error not to direct a verdict on the refusal charge, and (3) it was error not to give Rothenberger's proposed jury instructions. The Court of Appeals found no merit to any of the assignments of error and affirmed the judgment and conviction. We granted Rothenberger's petition for further review.

## II. ASSIGNMENTS OF ERROR

Rothenberger assigns it was error to affirm his conviction and sentence for refusal, because (1) his arrest was not supported by probable cause, (2) the county court should have directed a verdict on the refusal charge, and (3) the county court should have given Rothenberger's proposed jury instructions.

## III. STANDARD OF REVIEW

[1] When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court.[4]

[2,3] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment,

---

[4] *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

an appellate court applies a two-part standard of review.[5] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[6] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[7]

[4] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[8] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[9]

[5] Whether the jury instructions given by a trial court are correct is a question of law.[10] When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.[11]

---

[5] *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

[6] *Id.*

[7] *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014).

[8] *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

[9] *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

[10] *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015).

[11] *Id.*

## IV. ANALYSIS

### 1. Probable Cause to Arrest for Driving Under Influence of Drugs

Rothenberger's primary argument is that because neither Shepard nor Chitwood was a certified DRE officer, they could not formulate sufficient probable cause to arrest him for suspicion of driving under the influence of drugs. Specifically, Rothenberger suggests that only DRE-certified officers can rule out the possibility that a suspect's impairment is due to a medical condition, rather than drugs. And Rothenberger further argues that absent a valid arrest for driving under the influence, Bliss had no legal authority to ask Rothenberger to submit to a chemical test to determine the presence of drugs, so evidence of Rothenberger's refusal should have been suppressed.

[6] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.[12] These constitutional protections mandate that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.[13]

[7] Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.[14] We determine whether probable cause existed under an objective standard of reasonableness, given all the known facts and circumstances.[15] The probable cause standard is a practical, nontechnical conception that deals with the factual and practical

---

[12] *State v. Piper, supra* note 7.

[13] *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010).

[14] *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014).

[15] *Id.*

considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.[16]

[8] When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant.[17] Probable cause for a warrantless arrest is to be evaluated by the collective information of the police engaged in a common investigation.[18]

Rothenberger relies on our analysis in *State v. Daly*[19] to suggest we have approved of a specific DRE protocol which was not followed in the present case. In *Daly*, we said:

> A field DRE examination generally involves making three determinations: first, that a person is impaired and that the impairment is not consistent with alcohol intoxication; second, the ruling in or out of medical conditions that could be responsible for the signs and symptoms; and third, what type of drug is responsible for the impairment. The process is systematic and standardized. A DRE officer uses a "fact sheet" to record his or her observations—a standardized form with prepared entries for the various tests and observations the officer must perform.[20]

But in *Daly*, we were not considering the DRE protocol in the context of determining whether officers had probable cause to arrest for driving under the influence of drugs. Rather, we were considering a challenge to the admissibility of expert DRE testimony at trial to prove the defendant's guilt. Probable cause requires less than the evidence necessary

---

[16] *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016).

[17] *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

[18] *Id.*

[19] *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

[20] *Id.* at 910, 775 N.W.2d at 57.

to support a conviction.[21] In *Daly*, we neither addressed nor suggested the role, if any, the standard DRE protocol plays in determining probable cause to arrest a suspect for driving under the influence of drugs.

Rothenberger also relies on the Court of Appeals' opinion in *State v. Kellogg*[22] to suggest that a completed DRE examination by a certified officer is a necessary prerequisite to forming probable cause to arrest for driving under the influence of drugs. In *Kellogg*, a driver was stopped for speeding. The trooper noticed the driver was confused and overactive, had trouble concentrating, and could not sit still. The driver's demeanor made the trooper suspect she was under the influence of a drug. The driver denied drinking any alcohol but admitted she had "'taken some prescription medication.'"[23] The trooper, who was a certified DRE officer, administered standardized field sobriety tests, and the driver displayed impairment on all but one of the tests. The driver submitted to a preliminary breath test, which was negative for alcohol. The trooper asked the driver to submit to a chemical test of her urine to determine the presence of drugs, and she refused. The trooper concluded the driver was impaired and arrested her for driving under the influence of drugs. A subsequent inventory search of her vehicle revealed a baggie of methamphetamine, and ultimately, she was charged with and found guilty of possession of methamphetamine.

On appeal, the driver argued the trial court should have suppressed evidence discovered during the search, because the trooper lacked probable cause to arrest her for driving under the influence of drugs. The Court of Appeals analyzed all the facts and circumstances known to the trooper at the time, and it affirmed the trial court's finding that there was probable

---

[21] See *State v. Perry, supra* note 16.

[22] *State v. Kellogg*, 22 Neb. App. 638, 859 N.W.2d 355 (2015).

[23] *Id.* at 640, 859 N.W.2d at 358.

cause to arrest for driving under the influence of drugs. While the Court of Appeals noted the trooper was a certified DRE officer, the court's conclusion that probable cause existed did not turn on the trooper's certification or on the specifics of any particular test performed, but, rather, on the totality of the officer's observations.

[9] We decline to adopt a bright-line rule requiring that the full DRE protocol be administered as a prerequisite to a finding of probable cause to arrest for driving under the influence of drugs.[24] Rather, we hold that when determining whether probable cause exists to arrest a suspect for driving under the influence of drugs, the same familiar, commonsense principles which govern all arrests apply.[25] We expressly reject Rothenberger's argument that only a DRE-certified officer who completes the full DRE protocol can find probable cause to arrest for driving under the influence of drugs. Such a rule would present law enforcement with a legal quandary in cases involving driving under the influence of drugs. Under Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014), peace officers can require a chemical test only when a driver has been arrested for an offense arising out of acts alleged to have occurred while driving or in actual physical control of a motor vehicle while under the influence of alcohol or drugs, and only when

---

[24] See, *State v. Kestle*, 996 So. 2d 275 (La. 2008); *Hill v. Director of Revenue*, 424 S.W.3d 495 (Mo. App. 2014). See, also, *People v. Ciborowski*, 2016 IL App (1st) 143352, 55 N.E.3d 259, 404 Ill. Dec. 163 (2016); *Bobolakis v. DiPietrantonio*, 523 Fed. Appx. 85 (2d Cir. 2013); *Wilson v. City of Coeur D'Alene*, No. 2:09-CV-00381-EJL, 2010 WL 4853341 (D. Idaho Nov. 19, 2010) (unpublished opinion); *Leverenz v. Kansas Dept. of Revenue*, No. 112039, 2015 WL 5750535 (Kan. App. Oct. 2, 2015) (unpublished opinion listed in table of "Decisions Without Published Opinions" at 356 P.3d 1077 (2015)); *State v. Rios-Gonzales*, No. 32585-3-II, 2005 WL 2858081 (Wash. App. Nov. 1, 2005) (unpublished opinion listed at 130 Wash. App. 1016 (2005)).

[25] See, *State v. Perry, supra* note 16; *State v. Matit, supra* note 14; *State v. Van Ackeren, supra* note 17.

the officer has reasonable grounds to believe such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol or drugs. Under the rule Rothenberger advocates, officers could not arrest a driver for driving under the influence of drugs until after completing the final step in the DRE protocol (a chemical test), but officers could not request the chemical test until after the driver had been arrested.

[10] We hold that neither DRE certification nor a completed DRE examination is a mandatory prerequisite to forming probable cause to arrest a suspect for driving under the influence of drugs. Instead, we determine whether Shepard and Chitwood had probable cause to arrest Rothenberger by considering whether they had knowledge, based on information reasonably trustworthy under the circumstances, which justified a prudent belief that Rothenberger had committed the crime of driving under the influence of drugs.[26]

Applying this standard, we conclude the officers had an objectively reasonable basis to suspect Rothenberger was operating a motor vehicle under the influence of drugs. Rothenberger was observed driving erratically and fluctuating between 20 and 60 m.p.h. He had slow and slurred speech, difficulty multitasking, and trouble maintaining his balance throughout the traffic stop. Rothenberger either failed or was unable to complete standardized field sobriety tests because he kept falling. He appeared "sedated." The officers did not smell alcohol on Rothenberger's breath and ruled out alcohol as a possible cause for his impairment after administering a preliminary breath test, which was negative. Rothenberger was asked whether he had taken any medications and admitted taking Suboxone. Deputies questioned Rothenberger to ascertain whether they "had an impairment case or a medical case" and nothing indicated Rothenberger's impairment was related to

---

[26] See *State v. Van Ackeren, supra* note 17.

an illness, an injury, or a medical condition. This information was reasonably trustworthy under the circumstances to justify a prudent belief that Rothenberger was impaired; that his impairment was not the result of alcohol, an injury, or a medical condition; and that he had committed the crime of driving under the influence of drugs. As the county court, the district court, and the Court of Appeals correctly concluded, the officers had probable cause to arrest Rothenberger for driving under the influence. Rothenberger's first assignment of error is meritless.

## 2. Overruling Motion for Directed Verdict

Rothenberger assigns it was error to overrule his motion for directed verdict on the charge of refusing a chemical test. He concedes there was ample evidence of impairment, but argues there was insufficient evidence that he was impaired by a drug. Additionally, he argues there was no evidence he refused a "chemical test" as that term is defined under title 177 of the Nebraska Administrative Code.

## (a) Evidence of Drug Impairment

[11] In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained.[27] If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.[28]

---

[27] *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014).

[28] *Id.*

The offense of refusing to submit to a chemical test is set out in § 60-6,197, which provides in relevant part:

(1) Any person who operates or has in his or her actual physical control a motor vehicle in this state shall be deemed to have given his or her consent to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine.

(2) Any peace officer who has been duly authorized to make arrests for violations of traffic laws in this state . . . may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor or drugs in violation of section 60-6,196.

(3) Any person arrested as described in subsection (2) of this section may, upon the direction of a peace officer, be required to submit to a chemical test or tests of his or her blood, breath, or urine for a determination of the concentration of alcohol or the presence of drugs. . . . Any person who refuses to submit to such test or tests required pursuant to this section shall be . . . guilty of a crime and upon conviction punished as provided in sections 60-6,197.02 to 60-6,197.08.

. . . .

(5) Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this

section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged. Failure to provide such advisement shall not affect the admissibility of the chemical test result in any legal proceedings. However, failure to provide such advisement shall negate the state's ability to bring any criminal charges against a refusing party pursuant to this section.

[12] As such, the material elements of the crime of refusal are (1) the defendant was arrested for an offense arising out of acts alleged to have been committed while he or she was driving or in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs; (2) a peace officer had reasonable grounds to believe the defendant was driving or in actual physical control of a motor vehicle in this state while under the influence of alcohol or drugs; (3) the peace officer required the defendant to submit to a chemical test of his or her blood, breath, or urine to determine the concentration of alcohol or the presence of drugs; (4) the defendant was advised that his or her failure to submit to a chemical test of his or her blood, breath, or urine is a separate offense for which he or she could be charged; and (5) the defendant refused to submit to a chemical test as required by the peace officer.

Here, the State adduced evidence that Rothenberger was arrested for driving under the influence; evidence suggesting the officers had reasonable grounds to believe Rothenberger was driving while under the influence of drugs; evidence that after additional testing by a DRE officer, Rothenberger was asked to submit to a urine test to determine the presence of drugs; evidence he was given a postarrest chemical advisement form telling him that if he refused the chemical test, he could be charged with a crime; and evidence that Rothenberger refused the test.

Rothenberger argues that because Shepard and Chitwood were not certified DRE officers, they could not eliminate

the possibility that his impairment was caused by a medical condition and thus could not form "reasonable grounds" to believe he was driving under the influence of drugs. We at least implicitly rejected this argument when concluding the officers had probable cause to arrest Rothenberger for driving under the influence, and explicitly reject it now. Viewing the evidence in the light most favorable to the State, we conclude there was evidence presented from which a rational jury could find beyond a reasonable doubt that when Bliss examined Rothenberger and asked him to submit to a chemical test for drugs, he had reasonable grounds to believe Rothenberger had been driving under the influence of drugs. Rothenberger's argument to the contrary is without merit.

### (b) Chemical Test

Rothenberger next argues he was entitled to a directed verdict on the refusal charge, because the State never established it was a "chemical test" he refused. Rothenberger's argument in this regard rests on a faulty premise, and improperly conflates the requirements for establishing the admissibility of chemical tests with the elements necessary for proving refusal of a chemical test.

For purposes of determining competent evidence in driving under the influence prosecutions, Neb. Rev. Stat. § 60-6,201(3) (Reissue 2010) provides that "[t]o be considered valid," a chemical test of blood, breath, or urine "shall be performed according to methods approved by the Department of Health and Human Services." Pursuant to this statute, title 177 of the Nebraska Administrative Code contains regulations governing chemical tests.[29] Those regulations define "[c]hemical test" as "an examination which measure's [sic] the presence of a drug by a chemical reaction, or chemical detection using a laboratory instrument" and define "[d]rug" as "any of the

---

[29] See 177 Neb. Admin. Code, *supra* note 3.

following[:] Marijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, or methamphetamine."[30]

[13] Rothenberger reasons that since the drug he admitted to taking, Suboxone, is not one of the drugs which would be detected by a "chemical test" approved under title 177, he cannot be found guilty of refusing a "chemical test." Obviously, because Rothenberger refused the chemical test, we will never know whether the test would have revealed the presence of one of the seven drugs referenced in the regulations. But more important, while the administrative regulations governing chemical tests impact the admissibility of competent evidence to prove the crime of driving under the influence, they have no relevance to proving the crime of refusal. As both the district court and the Court of Appeals correctly observed, neither the type of drug suspected to be causing a person's impairment nor the ability of a chemical test to reveal the presence of a particular drug is an element of the crime of refusal. The Legislature has made it a crime to operate a motor vehicle while under the influence of "any drug,"[31] and an officer's ability to request a chemical test under § 60-6,197 is not limited to any particular drug. A driver may not evade conviction for refusing a chemical test by claiming to be impaired by a drug which will not be detected by the requested test. Rothenberger's argument in this regard is entirely without merit.

### 3. Proposed Jury Instructions Defining "Chemical Test" and "Drug"

Rothenberger assigns error to the county court's refusal to give his proposed jury instructions defining "chemical test" and "drug." We conclude, as did the district court and the Court

---

[30] Id.

[31] Neb. Rev. Stat. § 60-6,196(1)(a) (Reissue 2010).

of Appeals, that the county court correctly refused to give Rothenberger's proposed jury instructions.

[14] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[32]

As discussed previously, it is immaterial to the crime of refusal whether the substance impairing the driver is one which will be detected by a chemical test which the driver has refused. Rothenberger's requested instructions were not a correct statement of the law and were immaterial to the crime of refusal. We conclude the county court did not commit reversible error when it refused each of Rothenberger's proposed instructions, and the district court and Court of Appeals correctly rejected this assignment of error as meritless.

## V. CONCLUSION

The county court did not err in finding there was probable cause to arrest Rothenberger for suspicion of driving under the influence of drugs, in refusing to direct a verdict on the refusal charge, or in refusing to give Rothenberger's proposed jury instructions. The district court and the Court of Appeals did not err when they affirmed those rulings. On further review, we affirm the decision of the Court of Appeals.

AFFIRMED.

CONNOLLY, J., not participating in the decision.

---

[32] *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).