IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. COLLIGAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CLIFFORD J. COLLIGAN, APPELLANT.

Filed May 22, 2018.    No. A-17-272.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Yohance L. Christie, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy, for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Clifford J. Colligan appeals from his convictions and sentences for third degree assault on an officer, and resisting arrest, second offense, in the district court for Lancaster County. He asserts that the jury was not properly instructed on the law, that there was insufficient evidence to find him guilty, and that his sentences are excessive. Based on the reasons that follow, we affirm.

## II. BACKGROUND

An information was filed charging Colligan with third degree assault on an officer, and resisting arrest, second offense. A jury trial was held on the charges.

The evidence at trial showed that on June 2, 2016, Patrick Murphy, a police officer with the Lincoln Police Department, was on duty, in uniform with his badge displayed, along with Lincoln Police Officer Andrew Winkler, who was also in uniform with his badge displayed.

- 1 -

Around 8:30 p.m., Murphy and Winkler were checking a vacant house in Lincoln, Nebraska, when a dispatch call came out that there had been a crime at Mum's Liquor, which was about a block away from their location. The dispatch call described the suspect as a Hispanic male wearing a black tank top and gray shorts, and that the individual was seen traveling northbound. Murphy could not recall the exact nature of the crime that occurred but thought it was something related to a theft. Murphy and Winkler proceeded in the direction where the suspect had been reported to be heading and they saw Colligan, who matched the description given by dispatch. Colligan was walking in an agitated, aggressive manner. Murphy testified that he intended to stop and detain Colligan. At that time, Murphy could not see that Colligan had anything in his hands, but Winkler noticed that Colligan had 8- to 12-inch long sticks in his hands that appeared to be sharpened at one end to a point. Murphy and Winker were walking behind Colligan and they both told him several times to stop, but he did not listen and continued walking. Winkler asked Colligan if he had been at Mum's Liquor, and Colligan replied affirmatively. Colligan continued to ignore the officers' commands to stop and kept walking.

Murphy and Winkler decided to place Colligan in handcuffs to detain him for the crime at Mum's Liquor. Winkler took out his handcuffs and tried to grab Colligan's right arm, while Murphy attempted to grab Colligan's left arm. Colligan turned around and raised his arm with a stick in his hand and swung it at Murphy. Murphy and Colligan both ended up on the ground and a struggle ensued. Murphy testified that Colligan's hands were around his head, neck, and upper torso, and he also felt Colligan's hand pulling on his gun. Winkler also testified that he saw Colligan's right arm near Murphy's firearm during the struggle. Winkler yelled at Colligan to stop resisting and when he failed to do so, Winkler removed his pepper spray and sprayed it in Colligan's face. Colligan continued to wrestle with Murphy and Murphy struck Colligan in the face with a closed fist in an attempt to gain control of Colligan. Murphy was able to create some distance and get back on his feet, at which time Winkler discharged his Taser. Colligan attempted to pull out the Taser probes and Winkler discharged his Taser a second time. Colligan then began to comply with the orders of the officers, and they were able to place him in handcuffs.

After the incident, Murphy had scrapes and cuts on both of his knees and a cut on one elbow. None of these injuries were present before the encounter with Colligan. Murphy was treated at the hospital after the incident and released the same day. Murphy testified that his injuries were caused by the fight with Colligan, which occurred on the ground of a concrete parking lot.

The video footage from Winkler's body camera was received into evidence and played for the jury. The entire incident took place in about a minute. Murphy explained what was happening in the video as it was played. He noted that at approximately 2 seconds in, Colligan acknowledges that the officers are speaking to him. At 11 seconds into the video, Colligan winds up one of his arms and took a swing at Murphy, and the two of them subsequently end up on the ground. The video then shows the struggle on the ground between Murphy and Colligan and ends with Colligan complying with the officers' orders after being tased twice.

Murphy also testified about the Lincoln Police Department's use of force policy based on an individual's behavior when interacting with officers. He testified that the first level of citizen behavior is psychological intimidation, which could be an individual giving the officer a dirty look for no reason. The next level is verbal noncompliance, which occurs when an individual tells an officer "no" or refuses to comply. The third level is passive resistance, which occurs when an

individual walks away or fails to comply with simple commands such as the command to place hands behind the back. The next level is defensive resistance, which would be a light use of force by an individual, such as someone pulling away after an officer has gone hands-on. The following level is active aggression, which occurs when an individual is actively fighting an officer, such as throwing punches or kicking. The final level is deadly force, which would be when the person with whom the officer is interacting has a weapon like a gun or knife, or anything that could cause substantial harm. Murphy testified that he received training on how to spot the different levels of citizen behavior.

Murphy also testified about the Lincoln Police Department's protocol for the use of force against individuals and how it correlates to an individual's level of behavior. He testified that the protocol is a continuum step process, and the first level is officer presence, which means showing up in uniform, displaying the badge, and showing authority. The second level is verbal direction, such as using commands like telling a citizen to stop, that he is not free to leave. The third level is soft, empty-hand technique, which involves placing hands on someone, or using pressure point techniques, such as pushing someone back from a situation to diffuse it. The next level is hard, empty-hand technique, which includes knee strikes, punching, blocking, or using pepper spray, and is used if someone is starting to resist or pull away when an officer is trying to handcuff them or if the person takes a swing at the officer. The next step is use of an intermediate weapon, which would mean using the Taser or a baton, and that is used when a person is actively assaulting the officer or using defensive resistance. The final level is deadly force, which means the use of a firearm.

Murphy said in this case, he started with officer presence and then gave a verbal direction, telling Colligan to stop. He next attempted to use a soft, empty-hand technique by trying to handcuff Colligan. Murphy then moved to a hard, empty-hand technique when he struck Colligan with a closed hand. Winkler also utilized a hard, empty-hand technique through the use of the pepper spray. Finally, Winkler used the intermediate weapon step by deploying the Taser. Murphy testified that the officers started with the least aggressive use of force and moved up the scale, just as he had been trained to do.

Colligan presented no evidence. The jury found Colligan guilty of third degree assault on an officer and of resisting arrest. The trial court entered judgment on the verdicts, and a presentence investigation report was ordered.

Prior to sentencing, an enhancement hearing was held and the State entered into evidence a certified copy of Colligan's prior conviction for resisting arrest. The district court found the conviction was valid for purposes of enhancement and that Colligan had been properly charged with resisting arrest, second offense, and properly convicted of the same. The trial court subsequently held the sentencing hearing. For his conviction of third degree assault on an officer, a Class IIIA felony, Colligan was sentenced to 18 months' imprisonment, followed by 18 months' postrelease supervision. For his conviction of resisting arrest, second offense, a Class IIIA felony, Colligan was sentenced to 18 months' imprisonment, followed by 18 months' postrelease supervision. Colligan was given credit for 241 days' served and the sentences of imprisonment were ordered to run consecutively to each other. The terms of postrelease supervision were to be served concurrently with each other.

### III. ASSIGNMENTS OF ERROR

Colligan assigns that the trial court erred in (1) instructing the jury, (2) finding that the evidence was sufficient to sustain convictions on the charges, and (3) imposing excessive sentences.

### IV. STANDARD OF REVIEW

Whether the jury instructions given by a trial court are correct is a question of law. *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016). When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id.*

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Rothenberger, supra.* The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

### V. ANALYSIS

#### 1. JURY INSTRUCTIONS

Colligan first assigns that the trial court erred in the instructions it gave the jury. Colligan makes three arguments under this assignment of error: (1) The court erred in failing to provide an instruction on self-defense; (2) the court erred in failing to provide his proposed jury instructions on self-defense, as well as instructions defining use of force by a police officer, and "constructive arrest or detention"; and (3) the court erred in providing a "failure to comply" jury instruction. We will address each of these in turn.

#### (a) Failure to Provide Self-Defense Instruction

Colligan argues that he was entitled to a self-defense instruction because self-defense was his theory of defense and the evidence at trial was sufficient to support his theory.

In prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest. *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997). A police officer, in making an arrest, must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances. *Id.*

Colligan asserts that the jury should have been able to consider and decide whether or not the force used by the officers was reasonable, and whether or not he was defending himself from unreasonable force. However, there was no evidence that the officers used unreasonable force. Murphy and Winkler, both in uniform and displaying badges, came upon Colligan who matched the description given by dispatch as the party who had been involved in a crime at Mum's Liquor. Colligan confirmed that he had been at Mum's Liquor and the officers told him multiple times to stop, which Colligan did not do. The officers each reached for one of Colligan's arms to place him in handcuffs and Colligan, who was holding sticks, swung at Murphy. Murphy and Colligan both ended up on the ground and a struggle ensued. Colligan had his hands around Murphy's neck, head, and upper torso and Murphy could feel Colligan pulling on his gun. Winkler told Colligan to stop resisting, but Colligan did not stop. Winkler sprayed Colligan with pepper spray, but he continued to struggle with Murphy. Murphy hit Colligan in the face with a closed fist, and Colligan continued to fight with Murphy on the ground. Winkler then deployed his Taser and Colligan attempted to pull out the Taser probes. Winkler deployed his Taser a second time, which then led to Colligan complying with the officers' commands.

In addition to the evidence regarding the actions of Murphy and Winkler in arresting Colligan, Murphy testified about the training he had received on levels of citizen behavior and their corresponding levels of force. As Colligan's behavior moved up the continuum, so did Murphy and Winkler's use of force. Murphy specifically testified that he started with the least aggressive use of force, and moved up the scale just as he had been trained to do. There was no evidence showing that the officers did not follow policy.

We conclude that there was no evidence which raised a legally cognizable claim that the police officers used unreasonable force in making the arrest. Accordingly, Colligan was not entitled to a self-defense instruction.

### (b) Failure to Provide Colligan's Proposed Jury Instructions

Colligan next argues that the trial court erred in failing to provide the jury with three instructions he proposed. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016).

Colligan's first proposed instruction was a self-defense instruction. In addition to arguing that a self-defense instruction should have been given to the jury, he argues that his proposed self-defense instruction specifically should have been given because it contained a definition of reasonable force. He contends that he was prejudiced by the court's failure to give his proposed instruction because it is an essential requirement that an officer use reasonable force.

A definition of reasonable force would only be necessary if a self-defense instruction was warranted by the evidence, which as we concluded above, it was not. Thus, the trial court did not err in refusing to give Colligan's proposed self-defense instruction, which included a definition of reasonable force.

Colligan's second proposed instruction explained when the use of force by a police officer is justifiable. Again, this instruction would only be necessary if a self-defense instruction was

warranted. Because a self-defense instruction was not warranted by the evidence, the trial court did not err in refusing to give Colligan's second proposed instruction.

Colligan's third proposed instruction defined when "constructive seizure or detention" of a person exists. Colligan argues that a definition of "constructive seizure or detention" was necessary because the jury instruction which defined "arrest" used the term "constructive seizure or detention" but did not define it. Specifically, the instruction stated in part: "To effect an arrest, there must be actual or constructive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority." Colligan claims that "constructive seizure or detention" is a legal concept that should have been defined for the jury, and that it cannot be ascertained that the jury did not convict based on an improper understanding of this legal concept.

In rejecting Colligan's third proposed instruction, the trial court stated that the instruction which defined "arrest" was taken directly from a Nebraska Supreme Court case and it encompassed Colligan's proposed instruction. We agree with the court's determination that the instruction it gave which defined "arrest" adequately covered Colligan's proposed instruction. Further, Colligan has failed to demonstrate how he was prejudiced by the court's refusal to give the instruction. The trial court did not err in failing to give Colligan's proposed instruction which defined "constructive seizure or detention."

### (c) Providing "Refusal to Comply" Jury Instruction

Colligan next argues that the trial court erred in giving the jury an instruction on "refusal to comply" which stated, "It is unlawful for any person to intentionally or knowingly refuse to comply with an order of a police officer made in the performance of official duties at the scene of an arrest, accident, or investigation." The instruction was based on a Lincoln Municipal Code section, which was entered into evidence for purposes of the jury instruction, but was not given to the jury. Colligan contends the instruction was irrelevant because whether or not he refused to comply had no bearing on his guilt or innocence of the crimes charges. He also alleges the instruction was misleading because it led the jury to believe he committed the crime of refusal to comply. Finally, he alleges the instruction was prejudicial because it suggested to the jury that his actions were unlawful regardless of the jury's decision on the specific crimes alleged.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

We first conclude that the jury instruction was not irrelevant or misleading as it was a correct statement of the law and was supported by the evidence. It informed the jury that citizens have a duty to comply with orders from police at the scene of an arrest or investigation, and there was evidence presented that Colligan failed to comply with orders from Murphy and Winkler which led to the subsequent altercation.

We also conclude that Colligan cannot show that the instruction on refusal to comply was prejudicial. Even if the instruction led the jury to conclude that Colligan's refusal to comply with the officers' orders were unlawful, the jury was given detailed instructions regarding the elements of the charged offenses that had to be proven in order to find Colligan guilty. The proof required to establish the elements of the offenses was not satisfied by the mere refusal to comply.

We conclude that Colligan was not prejudiced by the court giving the instruction on refusal to comply and that the instructions as a whole correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. We find no merit to Colligan's argument that the court erred when it provided a refusal to comply instruction.

## 2. SUFFICIENCY OF EVIDENCE

Colligan next assigns that the evidence was insufficient to convict him of the crimes charged, third degree assault on an officer and resisting arrest, second offense.

The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016).

### (a) Third Degree Assault on Officer

Neb. Rev. Stat. § 28-931(1) (Reissue 2016) provides that a person commits the offense of assault on an officer if (a) he intentionally, knowingly, or recklessly causes bodily injury to a peace officer and (b) the offense is committed while such officer is engaged in the performance of his official duties.

There is no dispute that Murphy was a peace officer and that he was engaged in the performance of his official duties, investigating a reported crime, when the events in this case occurred. Colligan argues that the evidence was insufficient to convict him on this charge because he did not intentionally, knowingly, or recklessly cause bodily injury to Murphy. Murphy's injuries consisted of a cut on his left elbow and some scrapes and cuts on his knees. Colligan contends Murphy's physical injuries were caused by the gravel and the cement where the altercation occurred, and were not a direct result of Colligan's actions.

The evidence showed that the altercation between Colligan and Murphy began as a result of Colligan's reaction when Murphy and Winkler tried to grab his hands to place him in handcuffs. Murphy testified, and the video from Winkler's body camera showed, that Colligan swung his arm, with a sharp stick in his hand, toward the officers. The confrontation began at that point and Colligan intentionally engaged in a physical struggle with Murphy. The two of them were wrestling around on a concrete surface, while Murphy tried to create distance between the two of them. Murphy testified that Colligan had his hands around Murphy's head, neck, and upper torso, and Murphy also felt Colligan's hand pulling on his gun. Murphy suffered physical bodily injuries as a result of the incident.

The evidence, when viewed in a light most favorable to the State, was sufficient for a rational trier of fact to conclude that Colligan intentionally, knowingly, or recklessly caused bodily injury to Murphy while the officer was engaged in the performance of his official duties.

(b) Resisting Arrest

Neb. Rev. Stat. § 28-904(1) (Reissue 2016) provides that a person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his or her official authority, from effecting an arrest of the actor or another, he or she (a) uses or threatens to use physical force or violence against the peace officer or another, (b) uses any other means which creates a substantial risk of causing physical injury to the peace officer or another, or (c) employs means requiring substantial force to overcome resistance to effecting the arrest. An arrest is taking custody of another person for the purpose of holding or detaining him or her to answer a criminal charge, and to effect an arrest, there must be actual or constructive seizure or detention of the person arrested. *State v. Heath*, 21 Neb. App. 141, 838 N.W.2d 4 (2013).

Colligan argues that the evidence was insufficient because there was no evidence that the officers told him he was being arrested or that he understood the officers were attempting to arrest him. He further argues that because he never knew or understood he was being arrested, he cannot have intentionally resisted arrest. Citing no authority, Colligan contends that in order to be convicted of resisting arrest, the law requires that the intent to arrest must be communicated and understood by the party being arrested.

Viewing the evidence in a light most favorable to the State, we find the evidence indicates that Colligan was approached by Murphy and Winkler, who were both in uniform, and confirmed that he had been at the location of the alleged crime to which the officers were responding. He was told to stop multiple times but did not do so. After Colligan's refusal to stop, the officers reached for his arms to place him in handcuffs, at which time he turned around and swung his arm with a stick in his hand towards the officers. A physical struggle then ensued between Colligan and Murphy, and Winkler told Colligan to stop resisting. Colligan continued to physically resist Murphy's attempts to gain control until Winkler tased him twice.

Although Murphy and Winkler both testified that they did not verbally advise Colligan that he was under arrest, there is no requirement that an officer inform a person he is under arrest. In *State v. Ellingson*, 13 Neb. App. 931, 939, 703 N.W.2d 273, 281 (2005), this court noted that although an officer "did not verbally announce an arrest," by ordering the defendant to exit a vehicle, the officer "had begun to take actions to effectuate physical control over [the defendant], which actions constituted an attempt to arrest." Similarly, in the present case, the officers began to take actions to effectuate physical control over Colligan and attempted to arrest him when they told him several times to stop and then tried to grab his arms and place him in handcuffs.

We find that the evidence was sufficient for a rational trier of fact to conclude that Colligan used or threatened physical force or violence against Murphy while intentionally attempting to prevent the officer from arresting him.

3. EXCESSIVE SENTENCES

Finally, Colligan assigns that the sentences imposed by the trial court are excessive. He alleges that the trial court failed to meaningfully consider his support in the community, his general life circumstances, including his history of trauma, and his motivation to utilize probation in order to better himself.

Colligan was convicted of third degree assault on an officer and resisting arrest, second offense, which are both Class IIIA felonies. See §§ 28-904(3)(b) and 28-931(2). A Class IIIA

felony is punishable by a maximum sentence of 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine or both, with no minimum sentence. If imprisonment is imposed, a minimum of 9 months' postrelease supervision is required. Neb. Rev. Stat. § 28-105 (Reissue 2016). The trial court sentenced Colligan to 18 months' imprisonment and 18 months' postrelease supervision on each charge. His sentences are clearly within the statutory limits and will not be disturbed absent an abuse of discretion. See *State v. Dehning*, 296 Neb. 537, 894 N.W.2d 331 (2017).

We have stated that when imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The record reflects that the court reviewed the presentence report and considered the above mentioned factors in determining Colligan's sentences. There is no evidence that the trial court abused its discretion in imposing the imprisonment sentences it did.

Colligan also contends that the court abused its discretion in imposing certain conditions that related to drug and alcohol testing or monitoring as part of postrelease supervision. He claims the conditions were unwarranted because the incident did not involve drugs or alcohol nor was he was not under the influence of drugs or alcohol, and there was nothing in the record to suggest that he was drug or alcohol dependent. However, the presentence report indicates that the offense at Mum's Liquor which caused the officers to look for Colligan involved him attempting to steal alcohol. Further, it is clear that Colligan has issues with drugs and alcohol. Colligan's criminal history in the presentence report notes several convictions for driving under the influence. The presentence report also notes Colligan's reported last use of marijuana was June 2016 and methamphetamine was December 2016. The court did not abuse its discretion in imposing terms related to drug and alcohol testing and monitoring as part of Colligan's postrelease supervision.

Colligan's assignment of error alleging that his sentences are excessive is without merit.

## VI. CONCLUSION

We find no merit to Colligan's assertions on appeal. The jury was properly instructed on the law, there was sufficient evidence to convict Colligan of the crimes charged, and his sentences are not excessive. Accordingly, we affirm.

AFFIRMED.