Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/12/2016 08:24 AM CST

State of Nebraska, appellee, v.
Detron L. Perry, appellant.
___ N.W.2d ___

Filed February 12, 2016.    No. S-14-506.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable search and seizure.

3. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications.

4. **Warrantless Searches: Search and Seizure: Proof.** In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement.

5. **Warrantless Searches: Probable Cause.** Probable cause, standing alone, is not an exception that justifies the search of a person without a warrant.

6. **Criminal Law: Police Officers and Sheriffs: Arrests: Probable Cause.** Under Nebraska law, a person may be arrested without a warrant when an officer has probable cause to believe the person either has committed a felony or has committed a misdemeanor in the officer's presence.

7. **Arrests: Probable Cause.** Probable cause must be particularized with respect to the person being arrested.
8. **Probable Cause: Words and Phrases.** Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.
9. **Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.
10. **Probable Cause: Words and Phrases.** Probable cause means less than evidence which would justify condemnation.
11. **Criminal Law: Search and Seizure: Probable Cause: Police Officers and Sheriffs: Motor Vehicles: Controlled Substances.** The odor of marijuana, alone or in combination with other factors, creates probable cause for an officer to infer that one or all of the occupants of a vehicle had recently committed the crime of possessing a controlled substance, thus providing probable cause for an arrest and a valid search of the person incident thereto.
12. **Arrests: Probable Cause: Controlled Substances.** The odor of marijuana in an area will not inevitably provide probable cause to arrest all those in proximity to the odor.
13. **Search and Seizure: Arrests: Search Warrants: Warrants: Probable Cause.** A search without a warrant before an arrest, also without a warrant, is valid as an incident to the subsequent arrest if (1) the search is reasonably contemporaneous with the arrest and (2) probable cause for the arrest exists before the search.

Appeal from the District Court for Douglas County: Joseph S. Troia, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, L. Robert Marcuzzo, and Natalie M. Andrews for appellant.

Douglas J. Peterson and Jon Bruning, Attorneys General, and Austin N. Relph, for appellee.

Wright, Connolly, Cassel, and Stacy, JJ., and Inbody, Judge.

Stacy, J.

After a stipulated bench trial, the district court for Douglas County found Detron L. Perry guilty of possession of a controlled substance. Perry appeals, arguing the court erred in

overruling his motion to suppress evidence found during a search of his person. We find no reversible error and affirm.

## I. FACTS

On September 5, 2012, law enforcement officers Chris Brown and Mike Sundermeier of the Omaha Police Department were on patrol in the area of 35th and Hamilton Streets in Omaha, Nebraska. They observed a vehicle traveling eastbound on Hamilton Street. It turned northbound onto 35th Street without using a turn signal, and when the brakes were applied, the officers noticed the vehicle's left taillight was not functioning.

The officers initiated a traffic stop. Brown approached the driver's side of the car, and Sundermeier approached the passenger side. Perry was driving, and his brother Devaughn Perry (Devaughn) was the front seat passenger. When Perry rolled down his window to speak with the officers, Brown immediately detected the odor of burnt marijuana coming from the vehicle. Brown described the odor as "a little faint," but he knew it was burnt marijuana because he had smelled it frequently when making traffic stops.

After noticing the odor, Brown saw Sundermeier talking to Devaughn. Brown noticed Devaughn kept putting his right hand between his right leg and the door. Brown then heard Sundermeier tell Devaughn to keep his hands on his lap, but Devaughn was not complying. When Devaughn eventually brought his hands up, Brown saw the top part of a twisted plastic baggie in Devaughn's right hand. At about the same time, Sundermeier opened the vehicle door and grabbed Devaughn's right hand, because he feared Devaughn was holding a weapon. Sundermeier discovered a baggie containing a white rocklike substance in Devaughn's hand. Devaughn was then removed from the vehicle and placed under arrest.

Brown then asked Perry to step out of the vehicle. Perry complied, and Brown searched Perry's person. Brown found what appeared to be crack cocaine in Perry's front pocket.

Brown then placed Perry in handcuffs and searched him again. During this search, Brown found pills in Perry's front right coin pocket he suspected were "ecstasy." Perry showed the officers his identification and was cooperative throughout the traffic stop.

The officers took Perry and Devaughn to the police cruiser. Perry's vehicle was then searched, and the officers discovered a marijuana cigarette in the center console and a firearm underneath the front passenger seat. Subsequent field tests revealed that the suspected crack cocaine found on both Perry and Devaughn was fake crack cocaine, known as gank. The pills discovered in Perry's pocket were found to be a form of "ecstasy."

The State formally charged Perry with unlawful possession of a controlled substance (benzylpiperazine, a form of "ecstasy"), a Class IV felony. Prior to trial, Perry moved to suppress the evidence obtained during his search and arrest. At the hearing on the motion to suppress, the officers testified to the above facts.

The court overruled Perry's motion to suppress. It found that the officers could have arrested Perry for the taillight violation and impliedly concluded the search of Perry's person was a search incident to an arrest. The court further found that the smell of marijuana coming from the vehicle provided probable cause to search the vehicle. In ruling on the motion to suppress, the court made a finding that Perry "was no[t] cooperative and gave a false name."

Following the suppression hearing, the court held a stipulated bench trial. The State offered into evidence a transcript of the hearing on the motion to suppress and a laboratory report documenting that the pills found on Perry were in fact "ecstasy." Perry then renewed the objections raised in his motion to suppress. The court ultimately found the search was valid, reasoning the smell of marijuana, combined with the officers' knowledge that the passenger was furtively holding a baggie of suspected drugs, provided probable cause to arrest

Perry. Perry was found guilty of unlawful possession of a controlled substance and sentenced to probation for a term of 4 years. He timely filed this direct appeal.

## II. ASSIGNMENTS OF ERROR

Perry assigns, restated and consolidated, that the district court erred in (1) finding he was uncooperative with police and gave a false name during the traffic stop and (2) overruling his motion to suppress evidence found during the search of his person.

## III. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[1] Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[2]

## IV. ANALYSIS

### 1. SEARCH INCIDENT TO ARREST

[2,3] Perry argues the evidence obtained during the search of his person must be suppressed because the search violated his constitutional rights. The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable search and seizure.[3] Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few

---

[1] *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014); *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014).

[2] *Id.*

[3] *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015); *State v. Nuss*, 279 Neb. 648, 781 N.W.2d 60 (2010).

specifically established and well-delineated exceptions, which must be strictly confined by their justifications.[4]

[4] The search here was conducted without a warrant. Thus, to be valid, it must fall within one of the warrantless search exceptions recognized by this court.[5] The State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement.[6]

Before addressing the applicability of any exception to the instant case, we pause to address the effect of our recent decision in *City of Beatrice v. Meints*.[7] In that case, we acknowledged we had often been imprecise when describing the exceptions to the warrant requirement and had incorrectly noted that "probable cause" was such an exception.[8] *Meints* clarified that probable cause, standing alone, is not an exception to the search warrant requirement "as applied to real property."[9]

[5] For precisely the reason articulated in *Meints*—a probable cause exception to the warrant requirement would swallow the rule—we now clarify that probable cause, standing alone, is not an exception that justifies the search of a person without a warrant. To the extent our prior cases indicate otherwise, they are disapproved.[10]

A valid arrest based on probable cause that a person is engaged in criminal activity is allowed by the Fourth

---

[4] *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

[5] See *id.*

[6] *Id.*

[7] *City of Beatrice v. Meints*, 289 Neb. 558, 856 N.W.2d 410 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 2388, 192 L. Ed. 2d 166 (2015).

[8] See, *State v. Gorup*, 279 Neb. 841, 782 N.W.2d 16 (2010); *State v. Gorup*, 275 Neb. 280, 745 N.W.2d 912 (2008); *State v. Eberly*, 271 Neb. 893, 716 N.W.2d 671 (2006); *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006); *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001).

[9] *City of Beatrice v. Meints, supra* note 8, 289 Neb. at 567, 856 N.W.2d at 417.

[10] See cases cited *supra* note 8.

Amendment, and if an arrest is made based upon probable cause, a full search of the person may be made incident to that arrest.[11]

[6,7] The question here, then, is whether the officers had probable cause to arrest Perry. Under Nebraska law, a person may be arrested without a warrant when an officer has probable cause to believe the person either has committed a felony or has committed a misdemeanor in the officer's presence.[12] Probable cause must be particularized with respect to the person being arrested.[13]

### (a) Probable Cause to Arrest Perry

The trial court ultimately analyzed whether the officers had probable cause to arrest Perry under the framework of *Maryland v. Pringle*.[14] In that case, a car with three occupants was stopped at 3:16 a.m. for speeding. When the driver was asked for his license and registration, he opened the glove compartment and an officer saw a large amount of rolled-up money inside. The officer had the driver step out of the vehicle and issued him a warning. He then asked for consent to search the vehicle, and the driver gave it. The search revealed $763 in cash and five plastic baggies containing cocaine. The baggies were found between a raised armrest and the back seat of the vehicle.

The officer questioned all three occupants of the vehicle about the drugs and money, but none offered any information. All three were placed under arrest and taken to the police

---

[11] See, *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State v. Evans*, 223 Neb. 383, 389 N.W.2d 777 (1986).

[12] Neb. Rev. Stat. § 29-404.02 (Reissue 2008); *State v. Evans, supra* note 11.

[13] *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979); *State v. Evans, supra* note 11.

[14] *Maryland v. Pringle*, 540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

station. At the station, the front seat passenger confessed the drugs were his and informed police the other two did not know about them. After the passenger was charged with drug possession, he moved to suppress his confession. He argued it was the fruit of an illegal arrest because the officer lacked probable cause to arrest him.

The U.S. Supreme Court noted that a warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. It reasoned that once the officer found the five plastic baggies containing cocaine, he had probable cause to believe a felony had been committed. It focused its analysis on whether the officer had probable cause to believe the passenger committed that crime.

[8-10] In doing so, the Court in *Pringle* noted that "the probable-cause standard is '"a practical, nontechnical conception"' that deals with '"the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."'"[15] It further noted that probable cause is "'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'"[16] Similarly, we have noted that probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.[17] We determine whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.[18] Probable cause "'means less than evidence which would justify condemnation.'"[19]

---

[15] *Id.*, 540 U.S. at 370.

[16] *Id.*, 540 U.S. at 370-71.

[17] *State Matit, supra* note 1.

[18] *Id.*

[19] *Maryland v. Pringle, supra* note 14, 540 U.S. at 371.

The Court in *Pringle* reasoned that to determine whether an officer had probable cause to arrest an individual, it had to examine the events leading up to the arrest and then decide "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."[20] It reasoned that because the drugs and money were in the car and none of the three occupants offered any information about their ownership, it was "an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine."[21] Thus, a reasonable officer could conclude there was probable cause to believe the passenger committed the crime of possession of cocaine, either solely or jointly. As part of the rationale, the Court noted that the occupants "were in a relatively small automobile," not a public place.[22] It reasoned that passengers in a car "'will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.'"[23] It noted that the "quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."[24]

In reaching the conclusion in *Pringle*, the Court distinguished both *Ybarra v. Illinois*[25] and *United States v. Di Re*.[26] In *Ybarra*, an investigator obtained a search warrant authorizing the search of a tavern and the bartender thereof, based

---

[20] *Id.*

[21] *Id.*, 540 U.S. at 372.

[22] *Id.*, 540 U.S. at 373.

[23] *Id.*

[24] *Id.*

[25] *Ybarra v. Illinois, supra* note 13.

[26] *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948).

on allegations the bartender had been observed with heroin packets. The search was conducted in the late afternoon, when 13 or fewer customers were present. One officer patted down each of the customers. When he patted down one customer, Ventura Ybarra, he felt a "'cigarette pack with objects in it.'"[27] He later returned and refrisked Ybarra and seized the cigarette pack. Inside, he found tinfoil packets containing heroin.

Ybarra was charged with the unlawful possession of a controlled substance. He moved to suppress the contraband found on his person, arguing the warrant did not authorize a search of his person. The Court held that where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. It found none existed with respect to Ybarra, in that the police had no reason to believe he was committing, had committed, or was about to commit any criminal offense.

In *Di Re*, an informant told an investigator that he had an appointment to buy counterfeit gasoline coupons from a man referred to as "Buttitta" at a specific place. The investigator went to the place and found a vehicle occupied by Buttitta, the informant, and Michael Di Re. The informant possessed counterfeit gasoline coupons and told the investigator at the scene that he obtained them from Buttitta. The investigator arrested all three and took them to the police station.

At the station, Di Re was searched and counterfeit gasoline coupons were found on his person. He was subsequently charged for possessing them, and moved to suppress the contraband, arguing the search was not justified by a search incident to a lawful arrest. The Court concluded there was no probable cause to justify the arrest. It reasoned that to have probable cause to arrest Di Re for a felony, the police needed information implicating him in either possessing or knowing

---

[27] *Ybarra v. Illinois, supra* note 13, 444 U.S. at 88.

that the coupons were counterfeit. It noted there was no evidence of a conspiracy, because there was no evidence Di Re was even in the car when the informant obtained the coupons from Buttitta or that he even knew the transaction occurred. It noted that the meeting occurred during the day in a public place and that even if Di Re had seen the exchange of papers, he likely would not have known what they were or that they were counterfeit. It further noted that the informant specifically implicated Buttitta, but gave no indication that Di Re was involved. It therefore concluded the officer lacked probable cause to arrest Di Re, and thus the search incident to the arrest was invalid.

The Eighth Circuit has also decided a similar case using the *Maryland v. Pringle* framework. In *U.S. v. Chauncey*,[28] the defendant was driving a vehicle stopped by an officer for having expired license plate tags. The defendant stepped from the vehicle and approached the officer. When questioned, he told the officer the vehicle had recently been purchased by his passenger and produced a bill of sale. When the officer then approached the passenger side of the car, he noticed a strong odor of raw marijuana and saw the passenger closing a drawstring bag in her lap. He seized the bag, confirmed it contained marijuana, and handcuffed both the defendant and the passenger while he searched the vehicle. The defendant was searched, but no contraband was found on his person. When the vehicle was searched, the officer found marijuana seeds and stems, a scale, and several sandwich bags. Both the driver and the passenger were arrested.

The defendant was subsequently charged with possession with intent to distribute, and he moved to suppress, arguing his arrest was made without probable cause. The court disagreed. It reasoned that the case fell somewhere between *Pringle* and *Di Re*. It noted that like *Di Re*, there was evidence

---

[28] *U.S. v. Chauncey*, 420 F.3d 864 (8th Cir. 2005).

tending to point to the passenger, as the marijuana was located in her purse. But it also reasoned that like *Pringle*, there was evidence to suggest the defendant was engaged in a common enterprise with the passenger. It noted that the smell of marijuana in the car was quite strong, so that the defendant had to have been aware of it in the vehicle. It also noted that the seeds, stems, and scale found inside the vehicle indicated the drug activity was open and notorious, so the defendant reasonably was aware of it. It thus concluded there was sufficient evidence to suggest to an objectively reasonable officer that the defendant was involved in the commission of a crime, and his arrest was supported by probable cause.

We have applied the *Maryland v. Pringle* framework in at least one similar case. In *State v. Voichahoske*[29] the defendant was a passenger in a car occupied by the driver and two others. The vehicle was stopped for speeding, and the officer had the driver come to his patrol car while he checked on her license and insurance. The driver lied about her name and said the car belonged to her cousin. The cousin was a person known to the officer for being involved with narcotics. The driver told the officer she did not know the back seat passengers, but identified the defendant, the front seat passenger, by name. The officer knew the defendant was also suspected of being involved in narcotics. While talking to the driver, the officer observed the passengers in the car continuously moving around.

The officer left the driver in the patrol car and went to talk to the passengers. They gave slightly contradictory versions of their travel plans. One of the back seat passengers was unable to hold still and continuously rubbed her vaginal area, complaining she had just started her menstrual cycle. This caused the officer to suspect she might be hiding contraband. The officer returned to his patrol car and asked the driver's

---

[29] *State v. Voichahoske, supra* note 8.

permission to search the vehicle. She refused, so he called for a canine unit. One arrived 12 minutes later. The dog alerted to both the passenger side door and the driver's side door. The passengers were then removed from the vehicle.

The passengers were questioned, and the defendant eventually confessed he had lied about the driver's identity and was hiding her driver's license in his wallet. The passengers were taken to a police station and searched. The defendant had a marijuana pipe in his sock and a bag of white powder in his rectum. The defendant was charged with possessing a controlled substance, and he moved to suppress the evidence found on his person.

In an analysis that perhaps did not clearly differentiate between probable cause to search the defendant and probable cause to arrest him, we discussed *Pringle* and whether there was probable cause "sufficiently particularized" to the defendant.[30] In this respect, we noted that the dog's alert provided probable cause that someone in the car possessed drugs. We also noted the defendant lied about the driver's identity and concealed her identification in his wallet. We further noted the passengers in the car had time to conceal evidence on their persons, and we found the officers had probable cause to believe drugs would be found on the defendant under a common enterprise theory.

The threshold issue here is whether the officers had probable cause to believe Perry was involved in a crime so as to conduct a valid arrest without a warrant. We analyze this issue under the framework provided by the U.S. Supreme Court in *Maryland v. Pringle*.[31] We find that the facts known to the officers at the time of the arrest were (1) the odor of burnt marijuana coming from the vehicle as soon as the driver's window was rolled down, (2) the presence of two individuals

---

[30] *Id*. at 76, 709 N.W.2d at 671.

[31] *Maryland v. Pringle, supra* note 14.

in the front seat of the vehicle, (3) the vehicle passenger's noncooperation with officers and attempt to hide the contents of the baggie in his hand from the officers, and (4) the discovery that the baggie contained what appeared to be crack cocaine, a controlled substance.

[11] The appellate courts of this State have consistently held that the odor of marijuana, alone or in combination with other factors, creates probable cause for an officer to infer that one or all of the occupants of a vehicle had recently committed the crime of possessing a controlled substance, thus providing probable cause for an arrest and a valid search of the person incident thereto.[32] This line of cases is in accord with various other jurisdictions.[33] The general rationale is based on common sense—the odor of marijuana indicates marijuana likely is present in the car, which makes it likely the car's occupants are committing the crime of possessing marijuana.[34]

Perry argues there is no precedential value in our prior cases holding the smell of marijuana emanating from a vehicle provides probable cause to search the occupants thereof, because the cases were decided at a time when possession of any quantity of marijuana was a crime. He contends that because possession of less than an ounce of marijuana is now only an infraction,[35] the mere smell of marijuana is not sufficient probable cause that a crime is being or has been committed and does not justify an arrest. We disagree.

---

[32] See, *State v. Masters*, 216 Neb. 304, 343 N.W.2d 744 (1984); *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981); *State v. Daly*, 202 Neb. 217, 274 N.W.2d 557 (1979); *State v. Clark*, 21 Neb. App. 581, 842 N.W.2d 151 (2013); *State v. Reha*, 12 Neb. App. 767, 686 N.W.2d 80 (2004).

[33] E.g., *Blake v. State*, 772 So. 2d 1200 (Ala. Crim. App. 2000); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997); *State v. Mitchell*, 167 Wis. 2d 672, 482 N.W.2d 364 (1992); *Ford v. State*, 37 Md. App. 373, 377 A.2d 577 (1977).

[34] See *Blake v. State, supra* note 33.

[35] See Neb. Rev. Stat. § 28-416(13) (Supp. 2015).

A Minnesota appellate court has addressed the logical fallacy of Perry's argument. In *State v. Ortega*,[36] an officer approaching a stopped vehicle smelled burnt marijuana coming from the passenger compartment. The district court found probable cause for the search, based on a 1973 Minnesota Supreme Court case holding the odor of marijuana provides an officer with probable cause to suspect criminal activity.[37] The defendant argued that the case was no longer precedential, because at the time it was decided, possession of any amount of marijuana was a criminal offense, but Minnesota had since changed its laws, and possession of a small amount of marijuana was only a petty misdemeanor. The court reasoned the change in the law was immaterial, because "[t]he probable-cause standard is merely a test to determine objective constitutional reasonableness, and regardless of the quantity of marijuana observed, the presence of any amount logically suggests that there may be more."[38] It held the officer had probable cause to arrest and search the defendant "upon smelling the odor of marijuana emanating from within the vehicle."[39]

We agree with this rationale. Objectively, the smell of burnt marijuana tells a reasonable officer that one or more persons in the vehicle recently possessed and used the drug. The officer need not know whether the amount possessed is more than 1 ounce in order to have probable cause to suspect criminal activity in the vehicle.

[12] Of course, the odor of marijuana in an area will not inevitably provide probable cause to arrest all those in proximity to the odor.[40] Here, the odor is simply one of the

---

[36] *State v. Ortega*, 749 N.W.2d 851 (Minn. App. 2008).

[37] See *State v. Wicklund*, 205 N.W.2d 509 (Minn. 1973).

[38] *State v. Ortega, supra* note 36, 749 N.W.2d at 854.

[39] *Id.*

[40] See 2 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.6(b) (5th ed. 2012).

factors analyzed under the *Maryland v. Pringle* framework. In addition to the odor of marijuana emanating from the vehicle, the arresting officers knew there were two individuals in the front seat of a vehicle, the passenger was not complying with directions from the officers and was hiding his hands, and a baggie the passenger held in his hand contained a substance that appeared to be crack cocaine. A reasonable officer with knowledge of all of these facts could conclude both occupants of the vehicle had knowledge of the presence of the marijuana and the suspected cocaine and exercised dominion over both, and thus the officer could have probable cause to arrest both occupants for drug possession. We note that probable cause does not require evidence sufficient to convict— only that which would lead to a reasonable inference of guilt.[41] We conclude that on the totality of the facts known to them at the time of the search of Perry's person, the officers had sufficient probable cause, particularized to Perry, to arrest Perry for drug possession.

### (b) Search Incident to Arrest

[13] The initial search of Perry's person was done before he was formally arrested. A search without a warrant before an arrest, also without a warrant, is valid as an incident to the subsequent arrest if (1) the search is reasonably contemporaneous with the arrest and (2) probable cause for the arrest exists before the search.[42] Here, probable cause existed before the search, and Perry's arrest was made immediately thereafter, making it reasonably contemporaneous with the search. The evidence found during the search was admissible, and the district court properly denied Perry's motion to suppress.

### 2. FINDING OF NONCOOPERATION

For the sake of completeness, we note that Perry also assigns as error the district court's finding that he was uncooperative

---

[41] See *Maryland v. Pringle, supra* note 14.

[42] *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991).

during the traffic stop. We review this finding of historical fact for clear error.[43]

The record shows it was the passenger, Devaughn, and not Perry, who was uncooperative with officers and gave a false name. The district court thus clearly erred in finding it was Perry who acted in this manner. This error, however, did not affect the propriety of the court's ultimate holding, which we affirm.

## V. CONCLUSION

For the foregoing reasons, we find the district court properly denied Perry's motion to suppress. We affirm his conviction and sentence of 4 years' probation.

AFFIRMED.

HEAVICAN, C.J., and MILLER-LERMAN, J., participating on briefs.

McCORMACK, J., not participating.

---

[43] See, *State v. Smith, supra* note 4; *State v. Gorup, supra* note 8, 279 Neb. 841, 782 N.W.2d 16 (2010).