IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. HAWLEY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL A. HAWLEY, APPELLANT.


Filed August 29, 2017.    No. A-16-1057.


Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Sean M. Reagan, of Reagan, Melton & Delaney, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

### INTRODUCTION

Michael A. Hawley was stopped by law enforcement for a traffic violation. During the traffic stop, law enforcement discovered that Hawley was in possession of marijuana and Alprazolam. Hawley was then arrested and charged with possession of a controlled substance (Alprazolam). Hawley filed a motion to suppress all evidence gathered from the stop and the search incident to his arrest. The Lancaster County District Court denied the motion and subsequently found Hawley guilty of possession of a controlled substance after a stipulated bench trial. Hawley appeals the denial of his motion to suppress and the sufficiency of the evidence supporting his conviction. We affirm.

### FACTUAL BACKGROUND

Officer David Nelson of the Lincoln Police Department was on patrol in a marked police cruiser on the morning of August 20, 2015. At about 9 a.m., he spotted a 2014 Chevy Malibu near

- 1 -

11th and G Streets in Lincoln, Nebraska. Nelson followed the vehicle and driver (Hawley) because the vehicle had out-of-county license plates and because Hawley gave Nelson a "suspicious glance." As a result, Nelson "wanted to turn around on the vehicle, get a license plate on the vehicle to determine if [he could] identify the driver of that vehicle." Nelson subsequently observed Hawley come to a complete stop at the intersections of 11th and A Streets and 11th and Washington Streets. But, after stopping at 11th and Washington Streets, Nelson saw Hawley enter the intersection improperly, forcing another vehicle to take evasive action by stepping on the brakes.

After observing the traffic violation, Nelson initiated a traffic stop of the vehicle. Nelson informed Hawley of the reason for the stop and requested Hawley's identification. Before producing his identification, Hawley received a phone call. Nelson allowed Hawley to answer the phone and complete the call. While on the phone, Hawley indicated that he was going to jail because he did not have an interlock device on the vehicle. Upon hearing that, Nelson called for another unit and another officer arrived a couple minutes later.

After the phone call, Nelson ordered Hawley out of the vehicle since "he told the person on the phone that he was going to go to jail," so Nelson believed "he probably had a reason to go to jail." Nelson then asked Hawley if he "had anything on him," and Hawley handed Nelson a small bag of marijuana, later determined to weigh 6.7 grams. After receiving the marijuana, Nelson placed Hawley in handcuffs and walked him to the police cruiser. At the cruiser, Nelson reached into Hawley's back right pocket, pulled out his wallet, opened it, and took out Hawley's "driver's permit with interlock restriction." Behind Hawley's "ID card was a small baggie of Alprazolam." After discovering the pills, Nelson placed Hawley in the back of the cruiser and searched Hawley's vehicle.

Nelson found a "meth pipe in a female's purse that [he] seized. . . . And maybe a marijuana pipe." Hawley's girlfriend, the registered owner of the vehicle, arrived at the scene at some point and claimed the "meth pipe" found in the vehicle. After the search of the vehicle, Nelson confirmed the pills from Hawley's wallet were Alprazolam and formally placed Hawley under arrest for possession of a controlled substance. When Nelson then checked Hawley's driver's license status, the "Nebraska DMV" showed "an 18-month restriction" and "[Hawley] was not eligible for reinstatement at the time. But he did have an interlock permit." Hawley was not charged with any other violation arising out of the stop.

PROCEDURAL BACKGROUND

The State charged Hawley with possession of a controlled substance (Alprazolam), a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014). (We note that Hawley's offense occurred prior to August 30, 2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.) Hawley filed a motion to suppress the evidence seized from his vehicle and person during the traffic stop, including all statements he made to law enforcement. He argued that he had been detained and searched without a warrant, warrant exception, or probable cause.

The district court held a hearing on the motion to suppress and made several findings. The court found that Nelson's testimony was credible and believable; that any traffic violation, no

matter how small, constitutes probable cause for a traffic stop; that Nelson had probable cause to search after Hawley handed Nelson the bag of marijuana, in combination with Hawley's statement about going to jail because the vehicle was not equipped with an interlock device; and that Nelson had authority to search Hawley and his wallet. The court then overruled the motion to suppress.

After a stipulated bench trial, the district court found Hawley guilty of possession of a controlled substance and sentenced him to 180 days in the Lancaster County Jail. Hawley appeals.

## ASSIGNMENTS OF ERROR

Hawley assigns that the district court erred by (1) denying his motion to suppress and (2) concluding there was sufficient evidence to sustain his conviction.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Garcia*, 281 Neb. 1, 792 N.W.2d 882 (2011). Regarding historical facts, we review the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id*.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hudson*, 279 Neb. 6, 775 N.W.2d 429 (2009). Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *Id.* Any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. *Id.*

## ANALYSIS

### TRAFFIC STOP

Hawley argues that "Nelson's testimony that he began following Hawley after there was no eye contact and an alleged 'suspicious glance' was the pretext and ultimate reason why Nelson stopped Hawley's vehicle for further investigation." Brief for appellant at 11. In support of this argument, Hawley highlights Nelson's testimony that he followed Hawley's car because "[p]atrolling for 16 years, every now and then you get the vehicle that will not make eye contact with you. . . . Eleven county vehicle driving through 11th and G and the driver gave me kind of a, in my opinion, a suspicious glance." Hawley claims that Nelson had decided to stop Hawley before the traffic violation and suggests that this decision invalidated the traffic stop, even if a traffic violation actually occurred. However, while Nelson's testimony indicates that he had turned around to "get a license plate" to identify the driver of the vehicle, he did not testify as to any intent to engage in a traffic stop at that point in time. It was not until Hawley improperly entered the intersection at 11th and Washington Streets that Nelson made the decision to pull Hawley over.

However, as to the alleged traffic incident at that intersection, Hawley claims there was no evidence to show that he created an immediate hazard when he entered the intersection at 11th and

Washington Streets or that the other vehicle had also entered the intersection. Hawley points out that Nelson was unable to produce dash camera footage of the incident and that Hawley was neither cited nor charged with a traffic violation. Hawley also notes that Nelson could not recall the make and model of the other vehicle that allegedly had to take evasive action. While the record supports Hawley's argument in this regard, the record also supports the occurrence of the incident as described by Nelson.

The relevant portion of Nelson's testimony explaining the traffic stop follows:

Q [by the State]: You indicated you observed a traffic violation. Can you describe what it was you observed?

A: Yes. The traffic violation I observed was violation of a stop sign. He [Hawley] did make a complete stop at the stop sign; however, there was oncoming traffic. The north and south is controlled by a stop sign and an eastbound vehicle was entering the intersection. Prior to entering the intersection, [Hawley] pulled out in front of it, causing the vehicle to take evasive actions by stepping on the brakes.

. . . I specifically remember [the driver of the other vehicle] recognizing that I was there, recognizing that he saw a violation also and kind of looked at me and put his hands up[.] . . .

After observing the incident, Nelson "immediately activated [his] overhead lights to initiate a traffic stop." According to Nelson, Hawley pulled over right away, and the events unfolded as described earlier.

As noted by the State, the district court specifically found Nelson's testimony to be "credible and believable[,]" and the court further stated that "any traffic violation, no matter how small, gives the officer probable cause to stop a vehicle." While Hawley questions Nelson's version of events and asserts that "[t]here was no traffic violation," we cannot say that the district court was clearly erroneous in making factual determinations based upon Nelson's testimony. Hawley's argument on this issue rests on his challenge to the credibility of a witness. And as often stated, any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. See *Hudson, supra.*

As to the articulated reason for the stop, the district court correctly observed that it is well established that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. See *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). As long as a traffic violation occurred, any purported ulterior motive for the stop is irrelevant. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). See, also, *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (constitutional reasonableness of traffic stop does not depend on actual motivations of individual officers involved).

As discussed above, the district court's factual finding of a traffic violation was not in clear error. And because any traffic violation, no matter how small, gives the officer probable cause to stop a vehicle, Nelson had probable cause to stop Hawley after the traffic incident at the intersection of 11th and Washington Streets. Nelson's earlier decision to follow Hawley did not invalidate the stop and the district court did not err in overruling Hawley's motion to suppress on this ground.

Hawley also challenges Nelson's search of his wallet and vehicle after discovery of the marijuana and Alprazolam. In particular, Hawley argues that the search of his wallet was impermissible because it was "not for protection (i.e. to search for weapons) and was not to search for any additional drugs; it was a search or rummage through his personal wallet to attempt to discovery [sic] incriminating evidence." Brief for appellant at 14. The State argues that Nelson had the authority to arrest Hawley for possession of marijuana and that the search of Hawley's wallet was a proper search incident to arrest.

Marijuana is a Schedule I controlled substance in Nebraska. See Neb. Rev. Stat. § 28-405(c)(7) (Reissue 2016). But, while possession of marijuana is criminalized, the severity of punishment depends on the weight and number of offenses. See § 28-416(13). First offense possession of one ounce or less is an infraction offense, with the second and third offense being categorized as misdemeanors. *Id.* The marijuana in Hawley's possession was later determined to weigh 6.7 grams, which would make it a citation infraction for a first offense and misdemeanors for the second and third offense. *Id*. Even if we assume that it was Hawley's first offense, law enforcement still had the authority to arrest him.

If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001). In Nebraska, law enforcement may arrest an individual for an infraction offense. See, *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992); Neb. Rev. Stat. § 29-427 (Reissue 2016).

If an arrest is made based on probable cause, a full search of the person may be made incident to that arrest. *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016). A search incident to a valid arrest is a recognized exception to the warrant requirement. *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001). Under this exception, an arresting officer may search the arrestee's person to discover and remove weapons and to seize evidence to prevent its concealment or destruction, and may also search the area within the arrestee's immediate control. *State v. Weible*, 211 Neb. 174, 317 N.W.2d 920 (1982). A warrantless search must be strictly confined by the exigencies which justify its initiation. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

Where formal arrest follows quickly on the heels of the challenged search of petitioner's person, it is not particularly important that the search preceded the arrest rather than vice versa. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). However, a search before an arrest, and claimed to be an incident of the arrest, cannot serve as a basis for the validity of the arrest. *Id.* Therefore, a search without a warrant before an arrest, also without a warrant, is valid as an incident to the subsequent arrest if (1) the search is reasonably contemporaneous with the arrest and (2) probable cause for the arrest exists before the search. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991).

In *Perry, supra*, the Nebraska Supreme Court noted that the appellate courts in this state have consistently held that the odor of marijuana, alone or in combination with other factors, created probable cause for an officer to infer that one or all of the occupants of a vehicle had recently committed the crime of possessing a controlled substance, thus providing probable cause

for an arrest and a valid search of the person incident thereto. The *Perry* court also agreed with the rationale of a Minnesota appellate court that said "[t]he probable-cause standard is merely a test to determine objective constitutional reasonableness, and regardless of the quantity of marijuana observed, the presence of any amount logically suggests that there may be more." *Perry*, 292 Neb. at 722, 874 N.W.2d at 46 (quoting *State v. Ortega*, 749 N.W.2d 851, 854 (Minn. App. 2008)). Therefore, when Hawley presented the marijuana, Nelson had probable cause to arrest and search him because the presence of some marijuana logically suggested that there may be more.

While Nelson searched Hawley before formal arrest, this fact does not render the search impermissible. The search was reasonably contemporaneous with the arrest as it occurred during the traffic stop, without any evidence of delay. See *Twohig, supra*. In addition, the fruit of the search (Alprazolam) did not form the justification for an arrest because the marijuana provided independent justification for arrest before the search. The district court did not err in overruling the motion to suppress on this ground.

### SUFFICIENCY OF EVIDENCE

Hawley finally argues that there is not sufficient evidence to support his conviction because there was no evidence presented that Hawley did not possess a prescription for Alprazolam. In other words, Hawley asserts that the State was required to prove that he was (1) in possession of Alprazolam, and (2) that he did not have a prescription for Alprazolam.

In Nebraska, a person who "knowingly or intentionally" possesses a controlled substance, "unless such substance was obtained directly or pursuant to a medical order issued by a practitioner authorized to prescribe while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony." § 28-416(3). Nelson discovered that Hawley possessed Alprazolam, a Schedule IV controlled substance under § 28-405(a)(20), during the traffic stop. Because Hawley was found in possession of a controlled substance, the remaining question under § 28-416(3) is whether or not he had a prescription for the Alprazolam. Hawley did not produce a prescription. But he argues that it was the State's burden to prove that he lacked a prescription. We disagree for two reasons as we now explain.

First, Neb. Rev. Stat. § 28-432 (Reissue 2016), places the burden on a defendant to produce authorization to possess a controlled substance:

> (1) It shall not be necessary for the state to negate any exemption or exception set forth in the Uniform Controlled Substances Act in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under the provisions of the act, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.

> (2) In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under the Uniform Controlled Substances Act, the person shall be presumed not to be the holder of such registration or form, and the burden of proof shall be upon him or her to rebut such presumption.

Second, when the facts relating to an exception in a criminal statute are difficult for the State to obtain and are at the same time peculiarly within the knowledge of the defendant, the

question should be considered as a defense or justification and not as a part of the description of the offense itself, so as to impose upon the State the burden of proof to establish the fact that the defendant is not within the exception. *State v. Minor*, 188 Neb. 23, 195 N.W.2d 155 (1972). Therefore, we agree with the State that it was not required to prove that Hawley possessed the Alprazolam without a prescription, as the statute presumes that to be the case; the burden to rebut the presumption rested with Hawley. Sufficient evidence supports Hawley's conviction for possession of a controlled substance.

CONCLUSION

For the reasons stated above, we find that the district court did not err in overruling Hawley's motion to suppress. We further find the evidence was sufficient to support Hawley's conviction, and that conviction is affirmed.

AFFIRMED.