IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DORSEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LOGAN R. DORSEY, APPELLANT.

Filed October 11, 2022.    No. A-21-925.

Appeal from the District Court for Otoe County: JULIE D. SMITH, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Logan R. Dorsey was convicted in the district court for Otoe County of possession of methamphetamine and possession of drug paraphernalia. The question pending before this court is whether the district court erred in overruling Dorsey's motion to suppress the evidence obtained as a result of law enforcement's search of his vehicle. We affirm the judgment of the district court.

## BACKGROUND

On August 12, 2020, the State charged Dorsey with one count of possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020), a Class IV felony; one count of possession of one ounce or less of marijuana in violation of § 28-416(13), an infraction; and one count of possession of drug paraphernalia in violation of Neb. Rev. Stat. § 28-441 (Reissue 2016), also an infraction.

- 1 -

On September 22, 2020, Dorsey filed a motion to suppress any and all evidence obtained by law enforcement as a result of the seizure of Dorsey and the subsequent search of his motor vehicle. In the motion, Dorsey asserted that law enforcement did not have probable cause to search his motor vehicle without a search warrant. He also alleged that the sheriff's deputy who conducted the search questioned him without first reading him his *Miranda* rights. The motion sought the suppression of "all evidence illegally and improperly obtained by officers of the State. . . ." The district court overruled the motion both as to the search and Dorsey's statements. On appeal, Dorsey only challenges the court's finding that the search of the vehicle was supported by probable cause.

A hearing on the motion to suppress was conducted on November 3, 2020. At the hearing, Deputy Scott Whipple of the Otoe County Sheriff's Office testified on behalf of the State. Dorsey testified on his own behalf. Whipple's body cam video was also received. The following relevant evidence was adduced at the hearing:

Whipple is a deputy sheriff who had been employed with the Otoe County Sheriff's Office for approximately two years at the time of the suppression hearing. He had been a certified law enforcement officer since April 2019. He had previously completed training regarding the identification of controlled substances during his basic training at the Nebraska Law Enforcement Training Center and in continuing education. During this training he received instruction on identifying substances through both visual observation and smell. Whipple also received training on the identification of drug paraphernalia, including pipes used to ingest methamphetamine, marijuana, and THC wax.

On March 14, 2020, Whipple was conducting regular patrol and community policing duties within Otoe County. Shortly after 11 p.m., Whipple was dispatched to a carwash in Syracuse, Nebraska, to check on the welfare of a person who appeared to be asleep in a parked vehicle. The reporting party stated that the person had been at the car wash for a period of time and did not wake up when the party tried to wake him.

When Whipple arrived at the carwash, he pulled into the parking lot and observed the vehicle backed into the middle bay of the car wash. He testified that he had previously seen this vehicle parked in the same location when he drove by two hours earlier. Whipple got out of the patrol car and approached the vehicle which was running. The video demonstrates that the vehicle's lights were on and the radio was audible, even with the doors and windows closed. Whipple circled the car two times, shining his flashlight into the vehicle. Whipple noticed a lone male sitting in the driver's seat who appeared to be passed out or sleeping.

At no point to this juncture did Whipple see the occupant moving. When he looked through the front driver's side window to more closely examine the interior of the vehicle, he saw a glass marijuana pipe in a storage compartment located to the left of the steering wheel. After observing the glass pipe, Whipple tapped on the driver's side window. The occupant woke up and opened the door to speak to Whipple. Whipple testified that when the occupant opened the car door, he immediately detected the odor of burnt marijuana.

Whipple inquired as to the occupant's condition and then asked for license and registration. Such documentation identified the occupant of the vehicle as Dorsey. The video demonstrates that Whipple then told Dorsey that he had observed the marijuana pipe and asked him whether he had been "smoking weed tonight." Dorsey acknowledged the presence of the marijuana pipe and that

he had smoked, but denied smoking anything that day. He contended that he was simply tired. Whipple asked Dorsey to get out of his vehicle and patted him down. He then asked Dorsey to sit in the front seat of his patrol vehicle. Whipple testified that at that point he believed he had probable cause to search the vehicle because of his observation of the glass marijuana pipe and the smell of burnt marijuana. Whipple testified that he told Dorsey that he had probable cause to search his vehicle based on his observation of the pipe and the smell of burnt marijuana. The video reveals that he only mentioned the pipe to Dorsey in justifying the search. However, during the hearing Whipple testified several times that he smelled the odor of burnt marijuana. At trial, his report, written shortly after the incident was received into evidence. It also recited that he detected the odor of marijuana.

Prior to beginning his search of the vehicle, Whipple asked Dorsey if there was anything else he would find in the car. Dorsey at first pled with Whipple not to search the vehicle. Whipple explained that if the only item to be found was the marijuana pipe, Dorsey would be cited and released. Dorsey thereafter directed Whipple to the top of the dashboard where he indicated he would find a "dope pipe" wrapped in a bandana. When Whipple searched the vehicle, he located the glass marijuana pipe that he had previously observed from outside the vehicle. In addition, on top of the dashboard wrapped in the bandana was another pipe which he associated with methamphetamine use. Whipple also found a small glass vial with a screw top in a storage compartment which contained a white crystal substance that later tested positive for methamphetamine. After finding these items, Whipple placed Dorsey into custody and transported him to the Otoe County jail. The vehicle was towed.

On cross-examination, Whipple acknowledged that hemp and CBD are legal in Nebraska. He also testified that he did not know whether the odor of CBD and hemp were similar to the smell of burnt marijuana, but that he had previously identified marijuana pipes 10 to 15 times. He further acknowledged that possession of drug paraphernalia and possession of less than an ounce of marijuana are both infractions. The video does include a phone conversation between Whipple and another deputy. Whipple reported that he detected no odor of alcohol "or anything" on the person of Dorsey.

Dorsey testified that he had borrowed the vehicle from his aunt as his vehicle had broken down. He explained that he was going to wash the car before returning it to her. He explained that he had fallen asleep in the car prior to washing the car. Contrary to his statement to Whipple on video, he denied that the glass pipe was used to smoke marijuana at all. He explained that he used the pipe to smoke CBD. According to Dorsey, burnt CBD and burnt marijuana smell the same.

The district court ultimately overruled Dorsey's motion to suppress. The court found that Whipple's initial contact with Dorsey came under the community caretaking doctrine because of a report that someone was "passed out" or asleep in a vehicle. The district court also explained that the warrantless search was allowed pursuant to the automobile exception to the warrant requirement. Finally, the district court explained that Whipple had probable cause to search the vehicle because he saw the marijuana pipe in plain view and detected the odor of marijuana when Dorsey opened the door.

A stipulated bench trial was held on September 20, 2021. The district court found Dorsey guilty on the charges of possession of methamphetamine and possession of drug paraphernalia. On

November 15, 2021, he was sentenced to serve 18 months of probation for possession of methamphetamine. In addition, he was fined $100 for possession of drug paraphernalia.

Dorsey now appeals to this court.

ASSIGNMENTS OF ERROR

On appeal, Dorsey assigns that the district court erred in overruling his motion to suppress. However, he argues only the issue of probable cause to search the vehicle. He makes no argument regarding the portion of his motion which sought suppression of his statements to Whipple. As such, we address only the issue of whether his Fourth Amendment rights were violated by the search conducted on his vehicle.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016). Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

In reviewing a motion to suppress, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but rather, recognizes the trial court as the finder of fact and considers that the trial court observed the witnesses testifying in regard to such motions. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

ANALYSIS

On appeal, Dorsey asserts that no probable cause existed for Whipple to search his vehicle. Specifically, he asserts that Whipple's body camera demonstrates that Whipple only told Dorsey that he observed the marijuana pipe and that he told his colleague by telephone that he did not "smell the odor of alcohol or anything." Thus, in Dorsey's view, Whipple's testimony that he smelled marijuana when he opened the car door was not credible. Dorsey further asserts that Whipple's observation of the glass pipe, standing alone, did not give Whipple probable cause to search the vehicle. We disagree with Dorsey's contention.

Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. See, U.S. Const. amend. IV; Neb. Const. art. I § 7. Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

As a general rule, automobiles, including containers and packages found therein that may contain the object of a search, may be searched without a warrant provided there is probable cause to believe the vehicle contains contraband. See *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). Under the automobile exception, a warrantless search of a vehicle with probable cause is lawful so long as the vehicle is mobile. See *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

The Nebraska Supreme Court has held:

the requirement of ready mobility for the automobile exception is met whenever a vehicle that is not located on private property is capable or apparently capable of being driven on the roads or highways. This inquiry does not focus on the likelihood of the vehicle's being moved under the particular circumstances and is generally satisfied by the inherent mobility of all operational vehicles. It does not depend on whether the defendant has access to the vehicle at the time of the search or is in custody, nor on whether the vehicle has been impounded. The purpose of the ready mobility requirement is to distinguish vehicles on public property from fixed, permanent structures, in which there is a greater reasonable expectation of privacy.

*State v. Rocha*, 295 Neb. 716, 755, 890 N.W.2d 178, 207 (2017).

In the present case, Dorsey was in the driver's seat of a running vehicle at the time Whipple approached. Thus, the automobile exception applies and we focus on whether probable cause existed to search the vehicle.

Probable cause is a flexible standard which depends on the totality of the circumstances. *State v. Seckinger, supra.* It does not demand any showing that such a belief be correct or more likely true than false. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Nor does it require the same type of specific evidence of each element of an offense as would be needed to support a conviction. *State v. Brewer*, 190 Neb. 667, 212 N.W.2d 90 (1973). What is required is a "fair probability" that contraband or evidence of a crime will be found. *State v. Goynes*, 303 Neb. 129, 139, 927 N.W.2d 346, 353 (2019), *cert denied Goynes v. Nebraska*, ___ U.S. ___, 140 S. Ct. 545, 205 L. Ed. 2d 345. Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *State v. Rocha, supra*.

In *State v. Seckinger, supra*, the Supreme Court explained that because of marijuana's status as contraband a trained officer who detects the odor of marijuana emanating from a vehicle in Nebraska has firsthand information that provides an objectively reasonable basis to suspect contraband will be found in the vehicle. The Supreme Court further explained that although there may be innocent explanations for the odor of marijuana inside a vehicle, the concept of probable cause is based on probabilities and does not require officers to rule out all innocent explanations for suspicious facts. *Id.*

In the present case, we find, based on the totality of circumstances, Whipple had a fair or reasonable belief that contraband or evidence of a crime would be found in the vehicle. Whipple first observed Dorsey's vehicle parked in the carwash approximately two hours before his welfare check. A reporting party informed dispatch that a person was in the driver's seat but was unresponsive. When Whipple arrived at the scene, the vehicle had not moved and was still running. Whipple observed Dorsey to be sleeping or passed out in the driver's seat. Prior to waking Dorsey up, Whipple observed a glass pipe that, in his experience, was consistent with being used to smoke marijuana. Upon being awakened, Dorsey admitted to Whipple that the pipe Whipple had seen was one which had been used to smoke "weed," but that he had not smoked it that day. When Dorsey opened his door, Whipple immediately smelled an odor of burnt marijuana. Finally, prior to Whipple initiating the search, Dorsey begged him not to search, but then directed him to where

he would find a second "dope pipe." These circumstances, considered together were clearly sufficient to establish probable cause to search Dorsey's vehicle.

Dorsey argues that additional circumstances negate a probable cause finding. First, he questions whether Whipple actually detected the odor of marijuana. He notes first, that although Whipple says he told Dorsey at the scene that he smelled marijuana, the video demonstrates that he did not. Moreover, he points to Whipple's telephonic statement to a colleague that he did not smell alcohol or anything on Dorsey as negating that he ever smelled an odor of marijuana at all. In the alternative, Dorsey argues that even if Whipple noted an odor consistent with marijuana, evidence was adduced at the suppression hearing indicating that any odor detected was CBD, a legal substance. At the suppression hearing, Dorsey testified that he did not use the pipe to smoke marijuana but rather he used it to smoke CBD. Dorsey thus contends that even if Whipple detected an odor of marijuana, an innocent explanation of that odor existed which negated probable cause.

We address Dorsey's arguments in reverse order. We first note that at the scene, Dorsey never contended that the pipe initially seen by Whipple was only used to smoke legal substances. In fact, Dorsey admitted to Whipple shortly after being contacted that he smoked "weed" but had not smoked it that night. He did not further define "weed" to mean CBD. Whipple was not required to rule out all innocent explanations for suspicious facts before making his decision to search.

Moreover, Whipple testified that he smelled burnt marijuana when the vehicle door opened. He also completed a police report to the same effect. We agree that contrary to his testimony, Whipple did not inform Dorsey that he had smelled an odor of burnt marijuana. Whipple admitted, however, that he had not reviewed the video prior to testifying. With regard to his telephonic statement that he did not smell alcohol "or anything," this statement appears to relate to whether there was any odor on or about Dorsey's person as opposed to from the interior of the vehicle. In any event, these issues relate to the credibility to be accorded to Whipple's testimony. Given our standard of review, we do not reweigh or resolve conflicts in the evidence, but defer to the determination of the district court who had the opportunity to observe the witnesses and weigh their credibility. The district court clearly found Whipple's testimony to be credible. We find nothing in Dorsey's arguments that would prevent the district court from finding that probable cause existed to search Dorsey's vehicle.

## CONCLUSION

Based on the totality of the circumstances, we find that probable cause existed for Whipple to believe that contraband or evidence of a crime would be located in Dorsey's vehicle at the time he conducted his search. As such the district court did not err in overruling Dorsey's motion to suppress.

AFFIRMED.