IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LONG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LAYTHAN C. LONG, APPELLANT.

Filed April 7, 2020.    No. A-19-635.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and George Dungan for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Laythan C. Long appeals his conviction of refusing a chemical test with two prior convictions. He contends that the district court erred in denying his motion to suppress, the evidence was insufficient to support his conviction, the sentence imposed was excessive, and he received ineffective assistance of trial counsel. For the reasons discussed herein, we affirm.

## II. STATEMENT OF FACTS

In November 2017, Long was charged with refusing a chemical test with two prior convictions, a Class IIIA felony, and third offense driving under the influence of alcohol, a Class W misdemeanor. See, Neb. Rev. Stat. § 60-6,196 (Reissue 2010) (driving under the influence); Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2018) (implied consent to submit to chemical test; refusal); Neb. Rev. Stat. § 60-6,197.03(4) and (6) (Cum. Supp. 2018) (penalties). In March

2018, Long filed a motion to suppress evidence obtained subsequent to his arrest on the basis that law enforcement lacked probable cause to arrest him.

### 1. MOTION TO SUPPRESS

At the suppression hearing, Officer Mark Kounovsky testified that he arrived at the scene of an accident in September 2017 around 11:22 p.m. At the scene, he observed minor damage to two pickup trucks involved in an accident and made contact with Kaitlin Smith and Ashley Rasp. Upon speaking with Smith and Rasp, Officer Kounovsky learned they were in Rasp's apartment when an alarm on Smith's keys went off prompting them to investigate her pickup truck. Smith and Rasp informed Officer Kounovsky that Rasp's neighbor, Donald Blair, told them he witnessed a pickup truck backing into Smith's pickup truck and described the driver as a white male in his thirties or forties. Blair then identified Long as the driver when Long emerged from a neighboring house. As Smith and Rasp conversed with Long, Long became belligerent and refused to give them his insurance information.

While speaking with Blair, Officer Kounovsky learned that after the accident, Long entered a neighboring house, and a younger male exited the house saying his dad hit the truck and was trying to get him, the younger male, to say he did it. Officer Kounovsky testified Blair identified the driver as Long with "100 percent certainty."

Officer Kounovsky also testified about his observations of and interactions with Long. Officer Kounovsky described Long's eyes as "watery, red, and bloodshot," and described his speech as slurred. Long told Officer Kounovsky that he had come from a bar in the area and had his last drink around 10:40 p.m. but never admitted to operating a motor vehicle. Eventually, Officer Kounovsky asked Long to complete a standardized field sobriety test because Long was the registered owner of the pickup truck that hit Smith's pickup truck; Blair identified Long as the driver of the pickup truck; and Long appeared to be under the influence of alcohol. Although Long did not take a preliminary breath test, Officer Kounovsky believed Long had operated a motor vehicle while under the influence of alcohol because of the strong odor of alcohol coming from Long; Long's statement that he had been drinking at the bar prior to the accident; Long had watery, red, bloodshot, droopy eyes; Long's speech was slurred; and Blair identified him as the driver. After the hearing concluded, the district court denied Long's motion to suppress evidence gathered as a result of his arrest.

### 2. TRIAL PROCEEDINGS

A trial was held in February 2019, at which Long renewed his motion to suppress regarding the evidence gathered subsequent to his arrest. During the trial, testimony was adduced from Kaitlin Smith, Ashley Rasp, Donald Blair, Officer Joseph Villamonte, Officer Kounovsky, and Jesse Bennett.

#### (a) Kaitlin Smith

Smith testified the alarm on her keys went off around 9:00 p.m. or 10:00 p.m. prompting her to investigate her pickup truck. Once she was outside, she observed some minor damage to her bumper, and Blair told her someone backed up into her pickup truck. While Smith was outside, a

man who identified himself as the son of the driver who hit her pickup truck came out of the neighboring house, followed a short time later by Long who appeared mad and smelled like alcohol. Smith asked Long for his insurance information, to which Long started yelling and "cussing" her out and refused to provide his insurance information to her. Instead, Long's son gave Smith insurance information that had expired in 2015. Smith testified that during this interaction, Long also slurred his speech. Smith testified law enforcement arrived at the scene approximately five minutes after Rasp had called to report the incident. Smith relayed all of this information about Long to law enforcement when they arrived.

### (b) Ashley Rasp

Rasp testified that after Smith's key alarm went off, both she and Smith went to Smith's vehicle to investigate. Rasp also testified that "a minute or two" later, a man came out of the neighboring house and identified himself "as the son of the alleged driver." Rasp's testimony established that shortly thereafter, Long also came out of the neighboring house. Rasp testified Long smelled like alcohol and that when Long was asked to provide his insurance information, he began arguing, yelling, and asserting Smith was at fault because of the way she parked her pickup truck. Rasp stated Long's son entered Long's truck and tried "to go through some papers and find something." At that point, Rasp returned to her apartment and called law enforcement. Later, Smith also returned to Rasp's apartment with Long's insurance card and a picture of his driver's license. When law enforcement arrived, Rasp informed them of her observations about the automobile accident, observations about Long, the conversation with Long, and statements made by Long's son.

### (c) Donald Blair

Blair testified he witnessed a pickup truck back into Smith's pickup truck around 8:00 p.m. Blair testified that after the accident, Long left the scene and entered a neighboring house. Blair testified that Smith and Rasp approached the scene of the accident just a "[m]inute or a couple of minutes" later, at which point Blair informed them of the accident and the driver's whereabouts. Blair described Long's interaction with Smith and Rasp as rude and belligerent leading him to believe Long was intoxicated. Blair indicated approximately an hour passed from the time of the accident to the time law enforcement contacted him. Blair testified that on the night of the accident, law enforcement asked him if Long was the person he saw driving the pickup, and Blair responded affirmatively. However, when Blair was asked at trial if he recognized Long, Blair stated, "I can't say he looks familiar."

### (d) Officer Joseph Villamonte

Lincoln Police Officer Villamonte testified he received training to identify signs of an impaired person, such as the odor of alcohol on a person's breath or person, watery bloodshot eyes, slurred speech, unsteady on his feet, and admissions of consuming alcohol. Officer Villamonte testified he arrived at the scene of the accident around 11:26 p.m. and contacted Long who was standing next to his pickup truck. Officer Villamonte testified Long smelled like alcohol; had watery, bloodshot eyes; slurred speech; and Long admitted he had his last alcoholic drink at a bar

around 10:40 p.m. Officer Villamonte testified that Long told him his son drove the pickup truck but was no longer at the scene of the accident. Officer Villamonte indicated he relayed the information he observed about Long to Officer Kounovsky, and Officer Kounovsky informed Officer Villamonte that he had learned Long operated the motor vehicle that night. Based on his interactions with Long and the information from Officer Kounovsky, Officer Villamonte concluded Long had operated a motor vehicle while under the influence of alcohol resulting in an accident.

### (e) Officer Mark Kounovsky

Officer Kounovsky testified that he arrived on the scene around 11:25 p.m. and made contact with Blair, Smith, and Rasp. Although Officer Kounovsky contacted Long later in the evening, Long was not in his pickup truck nor outside when Kounovsky first arrived on the scene. Blair told Officer Kounovsky that a male in his thirties or forties backed his pickup truck into Smith's pickup truck, pulled forward, then exited his pickup truck and entered a neighboring house. After conversing with Smith and Rasp, Officer Kounovsky learned Blair informed them that an accident occurred, and when Smith and Rasp went to investigate, they saw Long outside and saw damage to Smith's pickup truck. Long told Officer Kounovsky that Long had been at a bar and had his last drink around 10:40 p.m. Officer Kounovsky requested Long complete a standard field sobriety test and a preliminary breath test because he believed Long was under the influence of alcohol, but Long refused.

Officer Kounovsky testified that he believed Long operated a motor vehicle while under the influence of alcohol for numerous reasons including "watery, droopy, bloodshot" eyes, slurred speech, a strong alcohol smell emanating from Long, and Long's admission that he drank alcohol around 10:40 p.m. the night of the accident. Officer Kounovsky also believed Long operated a motor vehicle because he was the registered owner of the pickup truck, Blair identified him as the driver with "100 percent certainty," and Long's son, who Long claimed was the driver, "did not even remotely come close to matching the physical description of the person identified by Mr. Blair."

Officer Kounovsky also formed an opinion that the accident occurred between 11:05 and 11:15 p.m. because of the relatively close proximity of the bar that Long said he was at prior to the accident, and Smith and Rasp attempted to obtain Long's insurance information before reporting the accident to law enforcement. Based on all of this information, Officer Kounovsky arrested Long and transported him to perform a chemical breath test. Officer Kounovsky gave Long a post arrest chemical advisement explaining Long was required to submit to a chemical test or a breath or urine test to determine the concentration of alcohol in his system, but if he refused, he could be charged with the separate crime of refusal of a chemical test.

### (f) Jesse Bennett

Bennett, Long's friend, testified he and Long met at a friend's house and went to dinner around 7 p.m. at a local bar. Bennett testified they were at the bar for about forty-five minutes to one hour, and Long did not have anything to drink while at the bar. After leaving the bar, Bennett drove them back to the friend's house. The friend asked Long to move his vehicle out of her

parking spot, which he did and got into the accident. Long stayed outside and had a conversation with a few individuals, including Smith, before coming in and explaining what had happened. Bennett testified that, after the accident, Long drank alcohol, including a few shots of Fireball and a mixed drink. Bennett testified the accident occurred around 8:30 p.m. or 9 p.m., and believed approximately a couple hours passed from the time of the accident and Long's conversation with the individuals to when law enforcement arrived. Long was arrested a few hours later, after 11 p.m. Bennett testified he did not speak with law enforcement that night because he had a fine pay warrant for his arrest.

### 3. Jury Verdict and Sentencing

The jury returned a verdict finding Long guilty of refusal of a chemical test but not guilty of driving under the influence. At an enhancement hearing, the district court found Long had two prior convictions for refusing a chemical test making his current offense a third offense and a Class IIIA felony. The district court then sentenced Long to eighteen months' imprisonment, revoked his license for fifteen years, and fined him $1,000.

## III. ASSIGNMENTS OF ERROR

Long argues, renumbered and restated, that the district court erred in (1) overruling his motion to suppress, (2) sustaining his conviction for a refusal to submit to a chemical test when there was insufficient evidence, and (3) imposing an excessive sentence. Long also asserts that he "was denied his right to effective counsel under the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Nebraska State Constitution." Brief for appellant at 4.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *Id*. When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *Id*.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Long argues the district court erred in overruling his motion to suppress his arrest and all evidence gathered as a result of that arrest because the police lacked probable cause to believe he had operated a motor vehicle while under the influence of alcohol. Long asserts his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and under Article I, Section 7 of the Nebraska Constitution were violated when he and his vehicle were seized. Specifically, Long contends the unclear timeline of events made his arrest unreasonable because there was no probable cause to support it. Although Long does not explicitly state it, we surmise Long is arguing that his refusal to submit to a chemical test occurred as a result of his arrest. Because Long claims the officer lacked probable cause to arrest him, he argues that his refusal to submit to a chemical test is fruit of an illegal arrest. As such, we must first determine whether Long's arrest was illegal.

"The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government." *State v. Rothenberger*, 294 Neb. 810, 821, 885 N.W.2d 23, 32 (2016). "These constitutional protections mandate that an arrest be justified by probable cause to believe that a person has committed or is committing a crime." *Id*.

Regarding probable cause, the Nebraska Supreme Court has explained:

Probable cause to support a warrantless arrest exists only if law enforcement has knowledge at the time of the arrest, based on information that is reasonably trustworthy under the circumstances, which would cause a reasonably cautious person to believe that a suspect has committed or is committing a crime. Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.

*State v. Petsch*, 300 Neb. 401, 407, 914 N.W.2d 448, 453-54 (2018).

Here, Long was arrested because of the officer's suspicion that he had driven under the influence of alcohol. A "driving under the influence offense can generally be shown either by evidence of physical impairment and well-known indicia of intoxication or simply by excessive alcohol content shown through a chemical test." *State v. McGinn*, 303 Neb. 224, 232-33, 928 N.W.2d 391, 397 (2019), *modified on denial of rehearing* 303 Neb. 931, 932 N.W.2d 83. Accordingly, we must determine whether there was reasonably trustworthy information available prior to Long's arrest which would cause a reasonably cautious person to believe Long had driven a vehicle while under the influence of alcohol.

We first note that Long renewed the objection raised in his motion to suppress during trial requiring this court to review the evidence offered at the motion to suppress hearing as well as during trial. See *State v. Hartzell*, *supra*. Taking the evidence offered during the suppression

hearing and trial together, Officer Kounovsky testified regarding his interactions with Smith, Rasp, Blair, and Long and noted Long exhibited signs of intoxication. From conversations with Smith and Rasp, Officer Kounovsky discovered a pickup truck had hit Smith's pickup truck and that Blair had informed Smith and Rasp that Long was driving the pickup truck that caused the accident. Smith and Rasp informed Officer Kounovsky that when they conversed with Long a few minutes after the accident, Long smelled like alcohol, slurred his speech, became belligerent, and refused to provide his insurance information.

After speaking with Blair, Officer Kounovsky learned Blair witnessed the accident. Blair told Officer Kounovsky that, subsequent to the accident, Long entered a neighboring house and that a younger male exited the house saying his dad hit the truck and was trying to get the son to say he did it. Officer Kounovsky testified that at the scene, Blair identified Long as the driver with "100 percent certainty."

Aside from interactions with Smith, Rasp, and Blair, Officer Kounovsky also personally interacted with, and observed Long. Officer Kounovsky testified Long had watery, red, bloodshot eyes and slurred speech. Long informed Officer Kounovsky that he had come from a bar in the area and had his last drink around 10:40 p.m. but never admitted to operating a motor vehicle. Accordingly, the first time anyone suggested Long drank alcohol after the accident was at trial. That evidence was in stark contrast to Long's own statement to police at the scene that his last drink was at the bar.

Officer Kounovsky arrested Long for operating a motor vehicle while under the influence of alcohol due to the strong odor of alcohol coming from Long; Long's statement that he had been drinking at a bar prior to the accident; Long's watery, red, bloodshot, droopy eyes; Long's slurred speech; and Blair identifying Long as the driver. In light of the totality of these circumstances, we hold the lower court did not commit clear error in finding there were sufficient facts for Kounovsky to conclude Long had committed the crime of operating a motor vehicle while under the influence of alcohol in violation of § 60-6,196. Accordingly, the court did not err in determining that there was probable cause to support Long's arrest for operating a motor vehicle while under the influence of alcohol and in overruling Long's motion to suppress. Thus, this assignment of error fails.

### 2. SUFFICIENCY OF EVIDENCE

Long next argues the State failed to present sufficient evidence to sustain a conviction for refusal to submit to a chemical test. Specifically, Long asserts the State failed to prove he was driving, or in actual physical control of, a motor vehicle while under the influence of alcohol because law enforcement did not see the accident, did not observe Long in physical control of his pickup truck while under the influence of alcohol, but instead relied on witnesses' statements to determine the identity of the driver and the timeline of events. Long contends law enforcement drew unreasonable inferences and "inferred a highly improbable timeline of events" which led to his arrest. Brief for appellant at 22.

The elements of the offense of refusing to submit to a chemical test are set forth in § 60-6,197. Specific to Long's argument, § 60-6,197(2) provides:

Any peace officer who has been duly authorized to make arrests for violations of traffic laws of this state or of ordinances of any city or village may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine *when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor or drugs in violation of section 60-6,196.*

(Emphasis supplied.)

Section 60-6,197(3) provides:

Any person arrested as described in subsection (2) of this section may, upon the direction of a peace officer, be required to submit to a chemical test or tests of his or her blood, breath, or urine for a determination of the concentration of alcohol or the presence of drugs. If the chemical test discloses the presence of a concentration of alcohol in violation of subsection (1) of section 60-6,196, the person shall be subject to the administrative license revocation procedures provided in sections 60-498.01 to 60-498.04 and upon conviction be punished as provided in sections 60-6,197.02 to 60-6,197.08. Any person who refuses to submit to such test or tests required pursuant to this section shall be subject to the administrative license revocation procedures provided in sections 60-498.01 to 60-498.04 and shall be guilty of a crime and upon conviction punished as provided in sections 60-6,197.02 to 60-6,197.08.

When making a determination regarding the sufficiency of evidence, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017). The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Here, Long appears to argue that Officer Kounovsky did not have reasonable grounds to believe Long was driving a motor vehicle while under the influence of alcohol and therefore had no right to require Long to submit to a chemical test. But for the same reasons we discussed in the last section that Officer Kounovsky had probable cause to arrest Long for the crime of driving while under the influence of alcoholic liquor, we likewise find Officer Kounovsky had reasonable grounds to believe Long was driving under the influence of alcoholic liquor which gave Officer Kounovsky the statutory right to require Long to submit to the chemical test. Long then refused that test. Viewing the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *id*. Thus, the evidence was sufficient to sustain the jury's finding, and Long's claim that there was insufficient evidence to convict him of this offense of failing to submit to a chemical test fails.

### 3. EXCESSIVE SENTENCE

Long contends the district court imposed an excessive sentence because it failed to adequately consider Long's education and experience and the impact it would have on his family and community.

Long was convicted of a Class IIIA felony. He was sentenced to 18 months' imprisonment followed by 9 months' postrelease supervision. Long's sentence is within the statutory sentencing range for Class IIIA felonies which are punishable by 0 to 3 years' imprisonment followed by 9 to 18 months' postrelease supervision if imprisonment is imposed and/or a $10,000 fine. See Neb. Rev. Stat. § 28-105 (Reissue 2016).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Regarding criminal sentences, the Nebraska Supreme Court has explained:

> When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. However, the sentencing court is not limited to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

*Id.* at 114-15, 927 N.W.2d at 60-61.

During the sentencing hearing, the district court considered relevant factors in imposing Long's sentence and was not limited to a mathematical set of factors. At the sentencing hearing, the district court noted it had reviewed Long's presentence investigation report and considered the facts that Long continued to deny responsibility for the offense, had seven prior driving under the influence convictions, had "multiple opportunities on probation and . . . had probation revoked three times," had been unsatisfactorily released from probation two times, and was on probation at the time of this offense and violated the terms of that probation. Based on the factors considered by the court on the record before pronouncing the sentence, we cannot say the court abused its discretion in rendering the sentence here. This assignment fails.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Long's final assignment of error is that he "was denied his right to effective counsel under the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Nebraska State Constitution." Brief for appellant at 4.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

Here, Long's assigned error that he "received ineffective assistance of counsel" is a general allegation and clearly lacks the specificity required by *Mrza*. Accordingly, Long has failed to raise an ineffective assistance claim on direct appeal.

## VI. CONCLUSION

For the reasons previously outlined, we affirm Long's conviction and sentence.

AFFIRMED.